FAMILY HOSPITAL NURSING HOME, INC., Plaintiff-Respondent, v. CITY OF MILWAUKEE, Defendant-Appellant.

*No. 75–447. Argued May 2, 1977.—Decided June 1, 1977.*
(Also reported in 254 N.W.2d 268.)

For the appellant the cause was argued by *Walter J. Schutz,* principal assistant city attorney, with whom on the brief was *James B. Brennan,* city attorney.

For the respondent there was a brief by *Stewart G. Honeck* and *Honeck, Mantyh & Arndt* and oral argument by *Stewart G. Honeck,* all of Milwaukee.

DAY, J. The question is whether the nursing home owned and operated by Family Hospital Nursing Homes, Inc.,[1] in the City of Milwaukee is a benevolent nursing home under sec. 70.11(4), Stats. and thus exempt from certain real and personal property taxes collected by the defendant city. On June 5, 1972 the city disallowed the plaintiff nursing home's claim for refund of 1970 and 1971 taxes paid under protest. This suit for a refund plus interest commenced October 17, 1972. After a trial to the court a judgment for the plaintiff was entered October 15, 1975. Other issues on this appeal are whether interest on the refund should have accrued from date of payment of the taxes or date of claim; whether the claim against the city was timely made; and whether the judgment was erroneous because it determined the plaintiff was also tax exempt in the years 1972 to 1974, which question was allegedly not put in issue by the pleadings and proof.

The city levied and the nursing home paid the following taxes which are here the subject of dispute: For 1970, $29,955.34 in real estate taxes paid January 20, 1971; for 1971, $33,322.03 in real estate taxes and $9,138.69 in personal property taxes, paid January 31, 1972.

The nursing home was originally conceived and operated as an adjunct to Doctors Hospital,[2] which is a nonstock, nonprofit and tax exempt acute medical hospital. The hospital's trustees commissioned feasibility studies to determine the need for a facility providing less intensive care than the hospital but providing skilled care which would not be available if the patient were sent

---

[1] The case came to this court under the name of Doctor's Hospital Nursing Home, Inc. Because the name was changed during the course of the litigation the nursing home's counsel requested the proper name be substituted in this case. The city did not object and the caption is changed accordingly.

[2] Now known as Family Hospital.

home. Upon the determination to go ahead with the facility the trustees obtained architectural services, acquired parcels of real estate near the hospital, negotiated a building contract and arranged financing. The Federal Housing Administration (FHA), as a condition of insuring the long-term loan, demanded that the nursing home be separately incorporated.

As a consequence of the FHA requirement, the nursing home was incorporated as a nonstock, nonprofit corporation under the Wisconsin Nonstock Corporation Law, Chapter 181, Stats. The Articles of Incorporation state:

"The corporation is organized exclusively for the charitable, scientific or educational purpose of erecting, establishing, maintaining and operating a nonsectarian nursing home . . . as an adjunct to Doctor's Hospital. . . ."

Additionally, Article XIII states:

"No dividends shall be paid and no part of the income or net earnings of the corporation shall be distributed to, or inure to the benefit of, its members, directors or officers as such or any private individual. This provision shall not be construed to prevent or prohibit the payment to any person of reasonable compensation for services actually rendered to this corporation or for its benefit, except that directors may receive reimbursement for their actual expenses incident to services rendered to the corporation as directors.

"Membership in the corporation shall be personal and shall not be sold, assigned or transferred in any manner, and all right and interest of each member in the estate, property, privilege and franchises of the corporation shall cease at the termination of his membership. In the event of liquidation or dissolution of the corporation, no liquidating dividends or dividends in dissolution of property owned by the corporation shall be declared or paid to any private individual for personal use, but in such event all property of the corporation shall be distributed in accordance with the provisions of Sections 181.52 and/or 181.53 as hereinafter amended or supplemented."

The nursing home opened each of its three floors as it was able to hire nurses and other personnel to staff it. The first patient was admitted sometime after August 1, 1970. At the time of trial it had 166 beds with a ninety-six percent occupancy rate.

The board of trustees of the nursing home consists of the same persons who serve on the Board of Trustees of Family Hospital.

The nursing home corporation is licensed by the State Board of Health and certified for Medicare under Title 18 and medical assistance under Title 19 of the Social Security Act. It is exempt from payment of Wisconsin state sales taxes and from state and federal income taxes.

The nursing home has an admissions priority policy favoring patients transferred from Family Hospital, and then in order, patients of physicians on the staff of Family Hospital or the nursing home, patients in order of application and patients transferred from other acute care facilities or nursing homes. Patients are not screened according to their ability to pay but with few exceptions they are eligible for some form of public assistance or Social Security. As of May 8, 1973, forty-two percent of the patient population qualified under Title 19 of the Social Security Act, fourteen percent under Title 18, and thirty-four percent had their own sources of funds. Ten percent constituted "other." The nursing home administrator testified government funding did not fully reimburse the facility for the level of services provided and as a result it has never earned money in excess of its cost of operation.

Nursing home facilities are not restricted to any particular group of physicians. Doctors are granted privileges either on a courtesy basis for an isolated patient or on a regular basis upon application for staff privileges, where the services are required by long-resident patients or a number of patients.

The trial court found that the subject real estate, consisting of less than ten acres, has never been used for profit since it was acquired by the plaintiff corporation. The court determined the corporation is a "benevolent nursing home within the context and meaning of that term as it is used in sec. 70.11(4), Stats. 1969, and the acts amendatory and supplementary thereto." This court is aided by a written decision by the trial court.

We have been called upon to interpret sec. 70.11(4), Stats. in the past. The statute reads:

"70.11 *Property Exempted From Taxation.* . . . (4) *Educational, Religious, And Benevolent Institutions; Women's Clubs, Historical Societies, Fraternities, Libraries.* Property owned and used exclusively by educational institutions offering regular courses 6 months in the year; or by churches or religious, educational or benevolent associations, including benevolent nursing homes and retirement homes for the aged, and also including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches; or by women's clubs; or by domestic, incorporated historical societies; or by domestic incorporated, free public library associations; or by fraternal societies operating under the lodge system (except university, college and high school fraternities and sororities), but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit. Property owned by churches or religious associations necessary for location and convenience of buildings, used for educational purposes and not for profit, shall not be subject to a 30-acre limitation. Leasing such property to similar organizations for educational or benevolent purposes, where all the income derived therefrom is used for maintenance, shall not render the property taxable."[3]

---

[3] "(B)enevolent nursing homes and retirement homes for the aged" was added to the statute by C. 64, Laws of 1967. The note

In *Milwaukee Protestant Home v. Milwaukee,* 41 Wis. 2d 284, 293, 164 N.W.2d 289 (1969) this court stated:

"In order for a retirement home for the aged or a nursing home or a hospital to qualify for exempt status under sec. 70.11, Stats., '. . . it must appear that, (1) appellant is a benevolent association; (2) the personal property is used exclusively for the purposes of such association; (3) the real and personal property is not used for pecuniary profit.' (*Prairie du Chien Sanitarium Co. v. Prairie du Chien,* 242 Wis. 262, 264, 7 N.W.2d 832 (1943).)"

The word "benevolent" has a broad meaning. The *Protestant Home* case referred to Justice Winslow's definition in *St. Joseph's Hospital Asso. v. Ashland County,* 96 Wis. 636, 639, 640, 72 N.W. 43 (1897):

"The word 'benevolent' means, literally, 'well-wishing.' It is a word of larger meaning than 'charitable.' It has been well said that, 'though many charitable institutions are very properly called benevolent, it is impossible to say that every object of man's benevolence is also an object of his charity.' "

The city argues the nursing home cannot be considered a benevolent institution because it has not been specifically declared benevolent in any legislative enactment and because its own articles of incorporation do not use

appended to the bill states, "Purpose Of The Bill. This bill would clarify the present exemption accorded to a limited amount of property owned by benevolent associations by making it clear that the exemption covers benevolent nursing homes and homes for the aged. . . .

"Public Policy Involved. The substitute amendment is desirable as a matter of public policy as it clarifies an existing statute which has been misinterpreted by some local property assessing offices." Drafting file to C. 64, Laws of 1967 at Legislative Reference Bureau.

the word "benevolent." The city also argues that scientific purposes are not included in sec. 70.11(4), Stats., though the articles state the corporation is organized exclusively for charitable, scientific or educational purposes.

These contentions put an undue emphasis on mere form. In examining the organizational structure and method of operation of an institution claiming exemption under sec. 70.11(4), it is the facts of the particular case regarded as a whole which are determinative. *Milwaukee Protestant Home, supra,* 41 Wis.2d at 293; *Prairie du Chien Sanitarium Co., supra,* 242 Wis. at 264. The articles of incorporation are not controlling, *Prairie du Chien* at 265; *Riverview Hospital v. Tomahawk,* 243 Wis. 581, 11 N.W.2d 188 (1943). The fact that the instant articles do not contain the word "benevolent" is not controlling.[4] Likewise, the presence of the word "scientific" in the articles is not fatal if the purpose and activity of the corporation, judged by the facts regarded as a whole, fall within the statute.

The city's argument the nursing home is not specifically declared by the Legislature to be a benevolent corporation is based on a misreading of *Associated Hospital Service v. Milwaukee,* 13 Wis.2d 447, 109 N.W.2d 271 (1961). That case interpreted sec. 182.032, Stats.[5] which declared that a hospital service corporation (and specifically Blue Cross) which meets terms of that section is declared to be a charitable and benevolent corporation. It is the city's contention the nursing home does not meet the requirements of sec. 182.032 and therefore

---

[4] *Cf., Duncan v. Steeper,* 17 Wis.2d 226, 231, 116 N.W.2d 154 (1962), which said the articles of incorporation of a hospital corporation are *prima facie* evidence of its character as a charitable institution. The question was whether the hospital had tort immunity as a charitable institution.

[5] Repealed L. 1975 C. 223, now see sec. 613.81, Stats. 1975.

is not declared to be a charitable and benevolent corporation. *Associated Hospital Service* made clear, however, that sec. 182.032 was not concerned with all types of charitable and benevolent corporations. The statute was, instead, "part of a nation-wide movement to enact enabling legislation so that Blue Cross plans of providing hospital service could be made available in the various states." *Associated Hospital Service,* p. 463. Sec. 182.032, Stats. is not material to a determination whether the nursing home is exempt from real and personal property taxes. In the words of the trial court, "The only proper consideration, therefore, (is) determined whether Family Hospital Nursing Home is, in fact, a 'benevolent nursing home' within the meaning of sec. 70.11(4), Wis. Stats."

The second inquiry in determining whether a nursing home qualifies for exempt status under sec. 70.11, Stats. is whether the personal property is used exclusively for the purposes of such association.

In *Milwaukee Protestant Home, supra,* this court said at 41 Wis.2d 294:

"We do not deal here with any tainting of the exclusiveness of use by some paralleling gain or profit to any person or persons. Not only do the articles of incorporation prohibit any payments to officers, members or any individual, the fact is that no one has received any such profit from the operation of the home since 1884. No member, director or officer has ever received any pecuniary benefit for so serving. In fact, they have never received reimbursement for their actual expenses.

"In this state a benevolent association must be completely free from the fact or even possibility of profits accruing to its founders, officers, directors or members."

Counsel for the city at oral argument stated that the city does not claim that any benefit inures to the doctors who use the facilities of the nursing home for their patients. Nor does the city claim that any benefits inure to the corporators or trustees. It was brought out

at the time of oral argument that there are approximately 200 doctors on the staff of Family Hospital.

Another requirement for exemption is that the real and personal property may not be used for pecuniary profit. But this requirement does not mean the institution must operate at a loss. As stated in *Milwaukee Protestant Home,* 41 Wis.2d at 296, "(i)t is not an excess of income over outgo to which the statute refers. A benevolent association is not required to use only red ink in keeping its books and ledgers." The gain or profit which is prohibited is profit to someone other than the benevolent association itself. *Id.,* at 297. *Accord, Order of Sisters of St. Joseph v. Plover,* 239 Wis. 278, 283, 1 N.W.2d 173 (1941); *Associated Hospital Service v. Milwaukee,* 13 Wis.2d 447, 466, 109 N.W.2d 271 (1961); *Duncan v. Steeper, supra,* 17 Wis.2d at 234.

At the time of oral argument the city attorney stated that if the nursing home operation were operated in one of the wings of the hospital instead of being a separate facility in a separate building, the city would not challenge the exempt status of the operation. But the mere fact that it occupies a separate structure can hardly be a test as to whether it is "benevolent." It is how the facility operated, not its location that is determinative. The mere fact that it is incorporated separately in order to meet FHA mortgage requirements is not determinative of the question of its benevolent status.

Counsel for the city stressed that the fact the hospital gets its money by fees charged to patients rather than getting a sizable portion in alms from others takes it out of the "benevolent" category. We disagree.

We conclude that the nursing home is benevolent and not run for pecuniary profit. Benevolence as defined in *Milwaukee Protestant Home* has a broad definition with "no in-built implication or requirement of almsgiving." 41 Wis.2d at 300. The care of the sick and the suffering

is generally recognized as a "charitable purpose." *Duncan v. Steeper*, 17 Wis.2d at 235.

In this case the trial court found that the nursing home has continually operated at a deficit. It nevertheless admits patients without regard to their ability to pay. The court further found that all income is devoted to carrying out the purpose for which it was organized, "namely, the providing of nursing care to patients to enable them to return to normal life as soon as practicable after their acute hospitalization."

The nursing home is organized as a nonstock corporation under C. 181, Stats. Not all nonstock corporations qualify as benevolent or charitable institutions for the purpose of tax exemption however. *Duncan v. Steeper*, 17 Wis.2d at 235. Whether dividends or other pecuniary benefits are contemplated to be paid to its members is generally the test to determine whether a given corporation is organized for profit. *Associated Hospital Service, supra*, 13 Wis.2d at 466. In this case, the nursing home's articles of incorporation specifically prohibit the distribution of income or net earnings of the corporation to its members, directors or officers as such or to any private individual. Upon dissolution, the assets held by the corporation may be transferred or conveyed only to similar organizations engaged in activities substantially similar to those of the nursing home.[6] An institution's status depends on how it operates and the fact that it is nonprofit rather than the source of its

---

[6] Sec. 181.51(3), Stats. provides, *"Distribution Of Assets, . . .* Assets received and held by the corporation subject to limitations permitting their use only for charitable, religious, eleemosynary, benevolent, education or similar purposes, but not held upon a condition requiring return, transfer, or conveyance by reasons of the dissolution, shall be transferred or conveyed to one or more domestic or foreign corporations, societies or organizations engaged in activities substantially similar to those of the dissolving corporation, pursuant to a plan of distribution adopted as provided in this chapter. . . ."

operating funds. An institution need not be a mendicant to have its work qualify as benevolent.

The trial court also determined that the members of the board of trustees have contributed their services as trustees without any compensation whatsoever. The city argues the institution is not benevolent because articles of the nursing home provide that "directors may receive reimbursement for their actual expenses incident to services rendered to the corporation as directors." We find nothing in that provision that militates against the benevolent character of the institution. The value of the time and advice given by such board members is greatly in excess of the out-of-pocket expenses they may receive.

The city also contends the nursing home was not "exclusively used" for benevolent purposes on assessment day, May 1, 1970 because the evidence established the nursing home was not occupied by patients until sometime after August 1, 1970. The trial court found however, that on May 1, the nursing home was equipped and in the process of readying itself for the receipt of its first patient. The delay between the time construction was completed and the time the first patient arrived was due to the necessity of acquiring a full complement of operating personnel. The nursing home property was not used for any other purpose during the period. We agree with the trial court that the nursing home should not be taxable during the period in which it was readying itself for its benevolent purpose.

The next question is whether sec. 74.73 (1), Stats., bars recovery of taxes paid for 1970.

Sec. 74.73 (1), Stats., provides:

*"Recovery Of Illegal Taxes Plus Interest; Limitation.*
Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the town, city or village which collected such tax in the manner prescribed by law for filing

claims in other cases. If it appears that the tax for which such claim was filed or any part thereof is unlawful and that all conditions prescribed by law for the recovery of illegal taxes have been complied with, the town board, village board or common council may allow and the town, city or village treasurer shall pay such person the amount of the claim found to be illegal and excessive. If any town, city or village fails or refuses to allow the claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected, together with interest at the legal rate computed from the date of filing the claim. Every such claim shall be filed, and every action to recover any money so paid shall be brought, within one year after such payment."

After the trial but before entry of a judgment in this case the city caused to be issued an order to show cause why that part of the judgment relating to taxes paid in 1970 should not be disallowed. By affidavit of the city clerk and city tax assessor it was alleged legal action was commenced more than one year after payment of the 1970 taxes, contrary to the one-year limitation of sec. 74.73(1). Therefore, it is alleged, that part of the claim is barred. The trial court rejected this contention.

This court has held that where property is found to be exempt from taxation, the taxing officers were without jurisdiction to levy the tax and therefore compliance with the statutory limitation period in which to bring claim was not required. *Trustees of Clinton Lodge v. Rock County,* 224 Wis. 168, 170, 272 N.W. 5 (1937). The most recent application of the rule is found in *Hahn v. Walworth County,* 14 Wis.2d 147, 154, 109 N.W.2d 653 (1961) which, like *Clinton Lodge,* was an action to set aside a tax sale on the ground the property was tax exempt. This court stated:

"Twenty-four years have now elapsed since *(Clinton Lodge)* was decided by this court, and the legislature has not seen fit to amend secs. 75.61(1) and 75.62(1), Stats. to make them applicable to actions which assert the invalidity of tax sales grounded solely on the claim that the property taxed was exempt."

The theory for not applying the limitation period is that the tax assessment was void *ab initio* so there was nothing for a statute of limitation to act upon. *Chicago & N. W. R. Co. v. Arnold,* 114 Wis. 434, 436, 90 N.W. 434 (1902) ; *Wisconsin Real Estate Co. v. Milwaukee,* 151 Wis. 198, 138 N.W. 642 (1912).

The city cites *Ash Realty Corp. v. Milwaukee,* 25 Wis.2d 169, 130 N.W.2d 260 (1964) which distinguished the aforementioned line of cases. In *Ash,* plaintiff had paid property tax to two municipalities, both of which, because of an annexation dispute, claimed the property was within their boundaries. In attempting to avoid a statute of limitation the plaintiff invoked *Clinton Lodge.* This court responded that "to tax exempt property is unlawful in the sense that the local government is attempting to do what the legislature has specifically forbidden." 25 Wis.2d at 174. However, a different situation was found to exist in *Ash* where boundaries were in dispute. In that case, the tax levy was not an unlawful act nor was it an overreaching of its delegated powers. The court found the levy was "of colorable legality." *(Id.)* More on point is the *Wisconsin Real Estate Co.* case which at 151 Wis. 204–205 stated:

"Plaintiff contends that the assessment in the instant case was void *ab initio* because the city council acquired no jurisdiction to make it, and reliance is placed upon the cases of *Chicago & N. W. R. Co. v. Arnold,* 114 Wis. 434, 90 N.W. 434, and *Smith v. Sherry,* 54 Wis. 114, 11 N.W. 465, to sustain the contention. In the first case the lands were exempt from taxes, in the second

case they lay outside of the taxing district. Hence the taxing officers did not have, and never could acquire jurisdiction to tax the lands there in question. The tax was void not on account of any irregularity in the proceedings, such as a failure to perform a condition precedent or to give proper notice, but because of an absolute want of power to tax in any manner at any time. There is a wide distinction between a case where no tax can in any event be levied upon property because it is exempt or lies outside of the taxing district and a case where the property lies within the taxing district and is subject to taxation but the statutory or charter provisions have not been complied with in its levy. The former is void *ab initio* and can never be rendered valid. The latter is voidable, because of irregularities in the proceedings leading up to its levy."

Because the nursing home property is tax exempt, the taxing officers were without jurisdiction to levy the tax and therefore the limitation of sec. 74.73(1) is inapplicable.

The next question is whether the provision of that same statutory section providing interest should be awarded "at the legal rate computed from the date of filing the claim" should be followed. The trial court awarded interest from the date of payment.

Because collection of the tax was void *ab initio*, we conclude the municipality should pay interest for the entire period over which it wrongfully deprived the taxpayer of funds. The obligation of a unit of government to pay interest on liquidated obligations is identical to the obligation of other persons or business entities. *Milwaukee v. Fireman Relief Asso.*, 42 Wis.2d 23, 41, 165 N.W.2d 384 (1969).

Language suggesting a contrary result is found in *Chicago, M., St. P. & P. RR. Co. v. Milwaukee*, 47 Wis.2d 88, 176 N.W.2d 580 (1970). This was an action to recover real estate taxes paid to the city by the rail-

road, which claimed exemption under sec. 76.23, Stats. Upon a finding of exemption this court awarded interest from date of payment, citing *Fireman Relief Asso.* as cited in the previous paragraph. But the court noted in dictum that subsequent to the railroad's payment of taxes the legislature passed C. 157, Laws of 1967, adding the interest provision to sec. 74.73(1). The court said, "It is clear that interest can now only be allowed from the date of filing the claim. . . ." 47 Wis.2d at 101. We decline to follow this dictum under the instant facts.

The final issue before us concerns the judgment rendered by the trial court. Though the complaint alleged an unlawful assessment for the years 1970 and 1971, the court additionally rendered declaratory relief adjudging the nursing home exempt for the years 1972, 1973 and 1974. With respect to the year 1974, the judgment must be reversed. Because the trial ended in January 1974, and well before assessment day for that year, the record could contain no evidence to support this finding and judgment. However, we affirm the finding and judgment of exemption for 1972 and 1973. The court has long taken a liberal view on allowing amendment of the pleadings to conform to the evidence. Sec. 269.44, Stats. 1973; *now see*, sec. 802.09, Stats. 1975. Such an amendment may be made on the court's own motion so long as the parties have had an opportunity to be heard on the amendment. *Huntoon v. Lapozza,* 51 Wis.2d 447, 456, 204 N.W.2d 649, 654 (1973). Such opportunity was had in the instant case during the resolution of motions after verdict. That part of the judgment finding a tax exemption for 1974 is reversed. The judgment is affirmed in all other respects.

*By the Court.*—Judgment affirmed in part and reversed in part.