FRIENDSHIP VILLAGE OF GREATER MILWAUKEE, INC. and
Freedom Village, Inc., Plaintiffs-Respondents,

v.

CITY OF MILWAUKEE, Defendant-Appellant.†

Court of Appeals

*No. 92–1895. Submitted on briefs May 4, 1993.—Decided
December 21, 1993.*

(Also reported in 511 N.W.2d 345.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Grant F. Langley*, city attorney by *Kathryn M. West*, assistant city attorney, of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the briefs of *Quarles & Brady* by *David L. Kinnamon* and *Robert L. Gordon*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J. The City of Milwaukee (City) appeals from a judgment finding that "Freedom

Village," a retirement home developed by Freedom Village, Inc., is exempt from general property taxes due to its classification as a benevolent retirement home for the aged pursuant to sec. 70.11(4), Stats.[1] The City also challenges an earlier non-final order denying its motion to dismiss the complaint for failure to state a claim.

The City's appeal essentially distills to two claims: (1) the trial court erred in its conclusion that sec. 74.35, Stats., does not provide the exclusive remedy for a taxpayer objecting to a tax assessment; and (2) the trial court erred in its conclusion that the property known as Freedom Village, Inc. was tax exempt pursuant to sec. 70.11(4), Stats. Because sec. 74.35 is not the exclusive method for analyzing a property tax objection, and because Freedom Village, Inc. is indeed entitled to a tax exemption under sec. 70.11(4), we affirm in part and reverse in part.[2]

---

[1] Section 70.11 Stats., reads in pertinent part:

The property described in this section is exempted from general property taxes. . . . Property exempted from general property taxes is:

. . . .

(4) EDUCATIONAL, RELIGIOUS AND BENEVOLENT INSTITUTIONS; WOMEN'S CLUBS; HISTORICAL SOCIETIES; FRATERNITIES; LIBRARIES. Property owned and used exclusively by . . . benevolent associations, including benevolent nursing homes and retirement homes for the aged . . . but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit.

[2] The City also claims trial court error in the manner the judgment spelled out the method the single tax exemption of ten acres was applied to the land and buildings of Freedom Village and Friendship Village. Because we reverse the trial court determination that Freedom Village, Inc. was not the beneficial owner of Freedom Village on January 1, 1990, and conclude that

## I. BACKGROUND

In this appeal we address the issue of whether a senior citizens residential facility known as Freedom Village is entitled to a tax exemption pursuant to sec. 70.11(4), Stats. At the heart of the appeal is a complex corporate framework — involving both profit and non-profit entities — from which Freedom Village was created. A brief consideration of the framework as relevant to this appeal is appropriate.

At the top of the corporate framework is Friendship Living Centers, Inc. (FLC). FLC is incorporated as a non-profit organization. It has an eleven member board that receives no compensation for its work relating to the corporation. As relevant to this appeal, FLC functions as the parent corporation of both plaintiffs — Friendship Village of Greater Milwaukee, Inc. (Friendship Village, Inc.) and Freedom Village, Inc.

Friendship Village, Inc. is organized as a non-stock, not-for-profit corporation that has owned and operated a senior citizens residential and medical center located at 8616 North 72nd Street in the City of Milwaukee since 1973. The facility is called "Friendship Village." Friendship Village is a life-care facility that provides three levels of care depending on the health needs of its elderly residents at any given time, i.e., apartments, a licensed assisted living facility, and a licensed skilled nursing center. Residents pay a one-time endowment fee and a separate monthly fee for support and maintenance costs. Residents are then entitled to the apartment of their choice so long as good

both facilities are entitled to an exemption pursuant to sec. 70.11(4), Stats., we need not address the issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

212

health continues. If a resident's health deteriorates, he or she is then eligible for care in the Friendship Village Medical Center.

In 1987, the management of Friendship Village, Inc. formed a second non-profit corporation called Freedom Village, Inc. Freedom Village, Inc. was organized for the purposes of owning and operating a new facility called "Freedom Village." The new facility, located on an approximately twenty-eight acre site adjacent to Friendship Village, was intended to service elderly persons who were capable of enjoying a somewhat more independent lifestyle than residents of Friendship Village.

The land on which Freedom Village was to be built was owned by Friendship Village, Inc. Because Friendship Village, Inc. was entitled to a federal tax exemption, it retained title to the land until Freedom Village, Inc. obtained a similar exemption. An exemption pursuant to 26 U.S.C. sec. 501(c)(3) (1988) was granted on July 21, 1989.[3]

Construction of Freedom Village began in September 1988. The project was financed primarily by City of Milwaukee tax-exempt bonds. In August 1989, FLC contracted with Freedom Village, Inc. to provide management services for the organization and operation of Freedom Village. On January 17, 1990, the title to Freedom Village was transferred from Friendship Village, Inc. to Freedom Village, Inc.

On February 15, 1990, Friendship Village, Inc. commenced an action seeking a determination that the parcel of land upon which Freedom Village was built

---

[3] Section 501(c)(3) of the Internal Revenue Code states that an entity organized and operated exclusively for religious or charitable purposes shall be exempt from taxation. *See* 26 U.S.C. sec. 501(a) and (c)(3) (1988).

213

was tax exempt from real property taxes for 1989 and 1990. The City of Milwaukee filed a motion to dismiss alleging that payment of the taxes was a condition to maintaining such an action. The trial court denied the City's motion on August 13, 1990.

On April 15, 1991, the trial court approved a stipulation of the parties that limited the issues to be addressed at trial. Rather than seeking a determination regarding both the 1989 and 1990 assessment of the property in question, the parties agreed that:

> While the action seeks declaratory relief with respect to exemption of the property from 1989 and 1990 property tax, Friendship Village and the City agree that they will present to the Court for decision solely the issue of exemption from the 1990 property tax. Friendship Village and the City further agree that they will be bound as to exemption from the 1989 property tax on the Property, by a final judgment in this action following all appeals, with respect to the exemption from the 1990 tax on the Property.

Friendship Village, Inc. subsequently moved for summary judgment. On October 2, 1991, the trial court approved a stipulation that permitted Freedom Village, Inc. to be added as a plaintiff. The City answered the amended complaint and filed its own motion for summary judgment. Following an oral hearing, the trial court granted summary judgment in favor of Friendship Village, Inc. and Freedom Village, Inc. A judgment was entered on June 12, 1992. The City now appeals. Other facts necessary to a resolution of the case are set forth below.

214

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The City's first claim is that "[t]he trial court erred in denying the City's motion to dismiss where the plaintiff refused to proceed under sec. 74.35, Stats., which provides the exclusive remedy for a taxpayer seeking determination as to the legality of the assessment of allegedly exempt property."

*A. Standard of Review*

■

The Wisconsin Supreme Court has noted the following concerning a motion to dismiss for failure to state a claim:

> [T]o determine if a complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to a motion under sec. 802.06(2)(f), Stats., the facts pled are taken as admitted. No inference can be reached in respect to the ultimate facts alleged until resolved by judge or jury. The purpose of the motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. Since pleadings are to be liberally construed, a claim will be dismissed only if "it is quite clear that under no conditions can the plaintiff recover."

*Evans v. Cameron*, 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985) (citations omitted). In reviewing a sec. 802.06(2)(f) motion, this court accepts the alleged facts as being true and decides any legal conclusions without deference to the trial court. *See Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 731, 275 N.W.2d 660, 664 (1979).

## B. Application

The City first contends that the plaintiffs are not entitled to seek redress via a declaratory judgment action because the legislature, by enacting sec. 74.35, Stats., provided the exclusive remedy for a tax dispute under sec. 70.11(4), Stats. Section 74.35(2)(a), Stats., provides: "A person aggrieved by the levy and collection of an unlawful tax assessed against his or her property may file a claim to recover the unlawful tax against the taxation district which collected the tax." The City further argues that because the plaintiffs have not paid the taxes in dispute, they are precluded from seeking judicial review under sec. 74.35. Thus, the City maintains that the plaintiffs' complaint should be dismissed pursuant to sec. 802.06(2)(f), Stats. We are not persuaded.

Neither party disputes that sec. 74.35, Stats., is appropriately applied in controversies relating to ordinary property tax litigation, e.g., the amount of a tax or procedural irregularities in the collection of a tax. The present case, however, deals with the threshold question of whether a particular parcel of property is exempt from taxation. As noted by the supreme court, tax assessment on exempt property is "void *ab initio* so there [is] nothing for a statute of limitation to act upon." *Family Hospital Nursing Home, Inc. v. City of Milwaukee*, 78 Wis. 2d 312, 325, 254 N.W.2d 268, 275 (1977). Consistent with *Family Hospital*, we conclude that litigation over whether property is exempt from taxation is not generally subject to limitations which may apply to other property tax disputes. *See Trustees of Clinton Lodge v. Rock County*, 224 Wis. 168, 170, 272 N.W. 5, 6 (1937) (where property is found to be exempt from taxation, statutory limitations not applicable).

216

Thus, the City's argument that tax exemption disputes must be brought under the framework of sec. 74.35 fails.

Our conclusion begs the question: Is a declaratory judgment action an appropriate manner in which to consider the threshold question of whether Freedom Village is entitled to a tax exemption? Guided by the cases of *Family Hospital* and *Madison General Hospital Association v. City of Madison*, 71 Wis. 2d 259, 237 N.W.2d 750 (1976), we conclude that it is.

In *Family Hospital*, the issue was whether a nursing home owned and operated by Family Hospital was a benevolent nursing home pursuant to sec. 70.11(4), Stats., thus entitling it to an exemption from property tax for the years 1970 and 1971. *Family Hospital*, 78 Wis. 2d at 314, 254 N.W.2d at 270. A separate issue was whether the trial court erred by granting declaratory relief finding that the nursing home was exempt from property tax for the years 1972, 1973 and 1974. *Id.* at 327, 254 N.W.2d at 276. The supreme court first found that the nursing home was entitled to a tax exemption under sec. 70.11(4). *Id.* at 318-23, 254 N.W.2d at 272-75. The supreme court next concluded that the trial court acted appropriately *in rendering declaratory relief* adjudging the nursing home tax exempt for the years 1972 and 1973. *Id.* at 327, 254 N.W.2d at 276-77.[4]

In *Madison General*, the issue was whether Madison General had standing "to bring a *declaratory*

[4] The supreme court concluded that declaratory relief finding the nursing home tax exempt for 1974 was premature because the trial ended well before assessment day for that year and, therefore, no evidence could have been adduced to support that finding. *Id.* at 327, 254 N.W.2d at 276.

*judgment* action seeking a determination that certain property leased and used by it [was] exempt from taxation." *Madison General*, 71 Wis. 2d at 262, 237 N.W.2d at 752 (emphasis added). The supreme court first set forth the four conditions that must be met before a declaratory judgment action can be maintained: (1) a justiciable controversy; (2) adverse parties; (3) the party seeking declaratory relief must have a legally protectible interest; and (4) ripeness. *Id.* at 263, 237 N.W.2d at 752. The supreme court went on to conclude that Madison General met the four conditions and therefore had standing to challenge the issue of whether the property involved was exempt from taxation. *Id.* at 263-65, 237 N.W.2d at 752-53.

It is apparent from both *Family Hospital* and *Madison General* that declaratory relief in the context of a dispute over entitlement to a property tax exemption is appropriate. In the present case, the plaintiffs' amended complaint avers that the 1989 and 1990 real estate tax assessed and levied on real property located at 8650 North 72nd Street in the City of Milwaukee is illegal and should be declared void. Because sec. 74.35, Stats., is not the exclusive manner by which the plaintiffs had to proceed, and because a declaratory judgment action was properly maintainable, we conclude that the plaintiffs have stated a claim for which relief can be granted.

## III. SUMMARY JUDGMENT RULINGS

The City next claims the trial court erred in granting summary judgment in favor of the plaintiffs adjudging that Freedom Village "is exempt from general property taxes on real and personal property as a benevolent retirement home for the aged pursuant to

218

sec. 70.11(4), Stats., excepting only land in excess of ten acres necessary for location and convenience of buildings."

## A. Standard of Review

Here, both parties moved for summary judgment. When both parties move by cross-motions for summary judgment, it is "the equivalent of a stipulation of facts permitting the trial court to decide the case on the legal issues." *Streiff v. American Family Mut. Ins. Co.*, 114 Wis. 2d 63, 64-65, 337 N.W.2d 186, 187 (Ct. App. 1983), *rev'd on other grounds,* 118 Wis. 2d 602, 348 N.W.2d 505 (1984). In resolving this issue, we apply the same standards set forth under sec. 802.08(2), Stats., as do trial courts. *Spring Green Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Further, "[t]he interpretation and application of a statute to a particular set of facts are questions of law." *Boltz v. Boltz,* 133 Wis. 2d 278, 282, 395 N.W.2d 605, 606 (Ct. App. 1986).

## B. Application

Initially, we observe that the burden of proving an entitlement to a tax exemption is on the party seeking the exemption. *St. John's Lutheran Church v. City of Bloomer,* 118 Wis. 2d 398, 400, 347 N.W.2d 619, 621 (Ct. App. 1984). In considering whether Freedom Village is entitled to an exemption under sec. 70.11(4), Stats., we start with the following premise: tax-exemption statutes "must be given a strict construction." *See Columbia Hospital Ass'n v. City of Milwaukee,* 35 Wis. 2d 660, 668, 151 N.W.2d 750, 753-54 (1967).

> However, a strict construction is nonetheless a construction, and an exemption statute need not be given an unreasonable construction or the narrowest possible construction. A "strict but reasonable" construction seems to be the pithy and popular statement of the rule. The difference between a liberal and a strict construction is best illustrated in those cases where the meaning of the language expressing the objective intent of the legislature is doubtful; in such cases, any doubt under the strict construction rule must be resolved against the exemption.

*Id.* at 668, 151 N.W.2d at 754 (citations omitted). Thus, the modern rule is that tax-exemption statutes must be given "strict but reasonable" construction. *Trustees of Indiana University v. Town of Rhine*, 170 Wis. 2d 293, 299, 488 N.W.2d 128, 130 (Ct. App. 1992).

The application of the statute depends upon who "owned and used" Freedom Village on January 1, 1990. Thus, the central issue presented on this appeal is whether the property is entitled to a tax exemption, and, if so, who is entitled to claim it. At trial, the City's summary judgment motion was two-pronged: (1) Friendship Village, Inc. was not the beneficial owner of Freedom Village on January 1, 1990, and (2) Freedom Village was not a benevolent organization and, therefore, its property was not exempt from property tax under sec. 70.11(4), Stats. We agree in part and disagree in part.

The City claims trial court error in its conclusion that the Friendship Village, Inc. property was entitled to a tax exemption for the years 1989 and 1990. The City asserts that because Freedom Village, Inc., was the beneficial owner of Freedom Village, its activities alone should be examined to determine whether a tax exemption should be granted. In response, Friendship

Village, Inc. maintains, and the trial court agreed, that Freedom Village, Inc. had no ownership interest in Freedom Village as of January 1, 1990.

When determining the question of property taxation or exemption, our courts have uniformly considered not only who holds legal title, but also the status of the owner of the beneficial interest in the property. *See State v. Bareis*, 257 Wis. 497, 504-07, 44 N.W.2d 259, 262-64 (1950). Our case law has supported the view that the word "own" implies something more than mere technical legal title. In *Mitchell Aero, Inc. v. City of Milwaukee*, 42 Wis. 2d 656, 660, 168 N.W.2d 183, 184 (1969), the supreme court, after examining the concept of ownership for the purposes of property taxes, reasoned that tax exemption cases are consistent in construing "own" as meaning something substantially more in the way of enjoyment or the possession of other indicia of ownership other than mere paper title:

> Ownership is often referred to in legal philosophy as a bundle of sticks or rights and one or more of the sticks may be separated from the bundle and the bundle will still be considered ownership. What combination of rights less than the whole bundle will constitute ownership is a question which must be determined in each case in the context of the purpose of the determination. In this case for exemption one needs more than the title stick to constitute ownership.

*Id.* at 662, 168 N.W.2d at 185-86. *See also Gebhardt v. City of West Allis*, 89 Wis. 2d 103, 107, 278 N.W.2d 465, 467 (1979). Although the cases vary in their factual setting, they all stand for the proposition that "sub-

stance" will prevail over "form."[5] *Bareis*, 257 Wis. 2d at 505, 44 N.W.2d at 263. It should be noted that these cases and the cases to which they refer all concern public associations entitled by statute to an exemption rather than private associations. Nevertheless, the ownership analysis contained in these cases is equally well-suited to our present fact situation where we must determine which non-profit organization, if any, is the taxable entity eligible for the tax exemption.

It is uncontroverted that paper title to Freedom Village, as of January 1, 1990, was in the name of Friendship Village, Inc. Our examination, however, does not stop here. In addition to organizational meetings, twelve recorded Board of Directors' meetings of Freedom Village, Inc. took place between August 22, 1988, and November 28, 1989. These meetings concerned the construction, occupancy, and operation of the Freedom Village facility. With rare exception, each meeting reviewed sales, marketing and financial reports. During the May 24, 1989 meeting, the Board reviewed a report on the results of Freedom Village's grand opening on May 20 and 21, 1989. This meeting also reviewed and adopted the separate 1989-90 budget of Freedom Village for the year ending July 1991.

Subsequently, at the June 20, 1989 meeting, the Board confirmed the appointment of an executive director for the facility and discussed protesting the property tax levied by the City of Milwaukee on its then-existing buildings. As of the July 18 meeting, the Board, in terms of interim financing, was still function-

[5] *Cf. Town of Menominee v. Skubitz*, 53 Wis. 2d 430, 438, 192 N.W.2d 887, 890-91 (1972) (case in which the supreme court examined other possible relationships giving rise to tax liability).

ing through Friendship Village, Inc. On July 20, 1989, Freedom Village, Inc. received its own sec. 501(c)(3) IRC tax exemption status. On September 12, 1989, the Board met and was informed that the exemption had been received.[6] During the same meeting, the following actions were approved: the transfer of all assets, liabilities and funds relating to the operation of the facility from Friendship Village, Inc. to Freedom Village, Inc.; and, the opening of a checking account with the First Wisconsin National Bank. At the October 24 meeting, it was reported that in September the transfer of funds and liabilities had been completed. At the same meeting, assumption of debt documents for a $1.4 million construction loan were presented and approved. On October 31, 1989, the corporation was authorized to be a provider of continuing care contracts.[7] At a November 28, 1989 meeting, discussions concerning the separation of Freedom Village, Inc. from Friendship Village, Inc. took place. Finally, an audit report conducted by the accounting firm of Peat Marwick for the 1989-90 year indicates that prior to Freedom Village, Inc. receiving notification of its tax exempt status from the Internal Revenue Service, it operated under the

[6] A review of the record concerning the application for a sec. 501(c)(3) IRC tax exemption and the subsequent approval meeting makes it abundantly clear that the intention was to create two separate entities as soon as the IRS exemption was received.

[7] Although it was initially conceded by both parties that the reason for deferral on the transfer of property and other assets and liabilities was the delay in obtaining the IRS clearance for the sec. 501(c)(3) exemption, the plaintiffs argue that it was also significant to obtain the appropriate permit to be a provider of continuing care contracts. Both conditions were satisfied as of October 31, 1989.

common control and was a "division" of Friendship Village, Inc. The report noted that "effective August 1, 1989, the corporation's net assets were transferred from Friendship."

Our review of the activities of Freedom Village, Inc.'s Board of Directors leads us to conclude that as of January 1, 1990, the assets, liabilities and funds relating to Freedom Village had been transferred from Friendship Village, Inc. to Freedom Village, Inc. Further, two crucial authorizations had also been obtained: (1) a sec. 501(c)(3) IRC tax exemption; and (2) state authorization to be a long-term provider contractor. But for the January 17, 1990, conveyance of paper title for the facility to Freedom Village, Inc., as of January 1, 1990, Freedom Village, Inc. was substantially functioning as a separate independent non-profit entity operating Freedom Village. Clearly, a "substance over form" analysis leads to the logical conclusion that Freedom Village, Inc. was the beneficial owner of Freedom Village. Thus, as of January 1, 1990, Freedom Village, Inc. was the beneficial owner — either eligible for tax exemption or subject to general property taxation.

We now examine the City's assertion that the Freedom Village, Inc. property is not tax exempt because of the method in which Freedom Village, Inc. is operated. To support its claim that Freedom Village, Inc. is not "benevolent" as defined in sec. 70.11(4), Stats., and the case law thereunder, the City offers the following arguments concerning Freedom Village: (a) the facility is not designed for the aged; (b) persons of moderate means cannot afford the facility; (c) the facility does not provide the means for its residents to live out their remaining years; and (d) profits of the facility

224

have improperly inured to the benefit of its directors. We address the City's contentions *seriatim.*

Section 70.11(4), Stats. does not define "aged." Further, as observed by the trial court, no Wisconsin cases have ever read a definition of "aged" into the statute. The City requests this court to select a minimum age of sixty-two as being considered "aged" under sec. 70.11(4). As support for its request, the City refers to *Metropolitan Milwaukee Fair Housing Council v. Avondale Realty*, ERD Case #9051867 (March 25, 1991), an unpublished Department of Industry, Labor and Human Relations agency decision. In *Avondale Realty*, a case alleging that a residential facility violated the Wisconsin Open Housing Act, an ERD Administrative Law Judge concluded that an "elderly person" is: "A person 62 years of age or older on the date such a person intends to occupy the premises, or a family, the head of which, or his spouse, is an elderly person as defined herein." *Id.* at 8.

We decline to accept the *Avondale Realty* definition of "aged." Contrary to the City's contentions, we are not satisfied that the *Avondale Realty* case presents the clear answer as to an appropriate definition of "aged." Further, the case is of no precedential value. *See Local No. 695 v. LIRC*, 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990) ("Where a legal question is concerned and there is no evidence of any special expertise or experience, the weight to be afforded an agency interpretation is no weight at all."). We choose to adopt the trial court's conclusion that "aged" under Wisconsin law should be considered as it is under federal law: housing for elderly persons as set forth in the federal Fair Housing Act, i.e., "*occupancy by at least one person 55 years of age or older* per unit." *See* 42 U.S.C. sec.

3607(b)(2)(c) (1988) (emphasis added).[8] We conclude that in cases such as the one at issue, occupancy by at least one person fifty-five years of age or older, is an appropriate definition of "aged."

The City makes much of the fact that Freedom Village is not affordable for people of moderate means and, therefore, is not a benevolent organization. As noted by the plaintiffs, this issue, as well as a host of similarly related issues, was raised previously by the City in *Milwaukee Protestant Home v. City of Milwaukee,* 41 Wis. 2d 284, 297-301, 164 N.W.2d 289, 293-97 (1969). In *Milwaukee Protestant Home*, the supreme court clearly rejected any requirement that a benevolent association provide free services or be readily affordable by all those in the community. *Id.* at 298-99 & n. 17, 164 N.W.2d at 296-97 & n. 17. Thus, *Milwaukee Protestant Home* is controlling and the City's argument must be rejected.

The City next contends that the failure to provide residents of Freedom Village an opportunity to live out their remaining years disqualifies the facility from a tax exemption. The principal flaw in the City's argument is its failure to acknowledge the undisputed fact that Freedom Village was consciously structured to provide a continuum of care with its sister facility, Friendship Village. The facts indicate that residents of Freedom Village who require greater care can simply move into Friendship Village without having to meet any additional health requirements. Thus, our review of the record leads us to conclude that Freedom Village

[8] *Cf.* Wis. Open Housing Law sec. 101.22(1m)(m)3, Stats., which now follows the federal definition of "housing for older persons."

does indeed provide its members the means to live out their remaining years.

Finally, the City posits that Freedom Village does not qualify for a tax exemption because its profits have inured to the benefits of certain directors and officers. It asserts that certain Freedom Village, Inc.'s directors received compensation from other corporations which provide services to Freedom Village. Specifically, the City points to the following circumstances:

1. That Melvin Erickson, a director of Freedom, Inc., received a $40,000 annual salary as president of FLC, the parent corporation of both Freedom, Inc. and Friendship, Inc.[9]

2. That FLC had a management contract to provide certain administrative and financial services to Freedom, Inc. for $70,000 per year which Erickson executed on behalf of FLC.;

3. "At all relevant times" Erickson received a $16,000 annual salary as president of FD, [Inc.,] a sister corporation of Freedom, Inc. and Friendship, Inc. which had a contract to provide certain services to Freedom;

4. That Erickson was a director of Millway [Nursing Home];

5. That Freedom, Inc. paid $238,000 in marketing fees to a company named Affiliated Consultants which was owned by a member of the FLC board, William Eisner; and

---

[9] FLC = Friendship Living Center, Inc.
Freedom, Inc. = Freedom Village, Inc.
Friendship, Inc. = Friendship Village, Inc.

6. That expenses of various members of the Freedom board were reimbursed.

It is uncontroverted that Freedom Village, Inc.'s Articles of Incorporation prohibit its officers and directors from receiving compensation from the facility. The City, however, argues that this is not necessarily dispositive as there are no provisions barring these same corporate officers and directors from receiving compensation from Freedom Village, Inc. channeled through other related corporations. In essence, the City asks for an examination of the remuneration stream which, it argues, demonstrates pecuniary profit accruing to the officers of Freedom Village, Inc.[10]

Freedom Village, Inc.'s response to this contention is three-fold: (1) the record does not support the claim; or (2) in the absence of a showing of net earnings or profits, there can be no personal inurement; or (3) there is no demonstration that any compensation paid was unreasonable.

In *Prairie du Chien Sanitarium Co. v. City of Prairie du Chien*, 242 Wis. 262, 265, 7 N.W.2d 832, 834 (1943), the supreme court, after reviewing the various tests then existing to determine whether an association was benevolent and entitled to an exemption under sec. 70.11(4), Stats., stated the following:

> Obviously neither a single test nor isolated answers to each of the questions posed above will automatically determine when a hospital is a benevolent association. The facts of each case must be regarded as a whole and the substance of the scheme of operation as it exists must be examined.

[10] There is no attempt by the City to suggest a "piercing the corporate veil" approach to its claims, nor does the City attempt to argue the reasonableness of any monies appropriated.

The court further explained that when members of the owner organization are using the property as "an adjunct to their private business in such a way that it becomes a source of substantial help in the matter of earnings to be derived from the practice of their profession," there is the presence of "pecuniary profits" warranting no entitlement to the exemption. *Id.* at 267, 7 N.W.2d at 834. *See also Riverview Hospital v. City of Tomahawk*, 243 Wis. 581, 11 N.W.2d 188 (1943).

*Prairie du Chien* and *Riverview* are heavily fact-laden decisions. Both cases involved private physicians who established hospitals and then utilized the hospitals as an adjunct to enhancing their private professional practices. On the other hand, *Milwaukee Protestant Home* and the *Order of the Sisters of St. Joseph v. Town of Plover*, 239 Wis. 278, 1 N.W.2d 173 (1941), involved the operation of benevolent institutions by charitable organizations whose sole activity was to further the purpose of the benevolent institution. Even with this distinction, it is significant to note that *Prairie du Chien* and *Riverview* do not necessarily stand for the proposition that remuneration for services is a disqualification *per se*. The cases simply set an upper limit for disqualification purposes.

Our research has failed to disclose any reported Wisconsin cases or Department of Revenue rulings precisely on point, i.e., if remuneration is allowable, at what amount will it be construed as the use of property inuring to the pecuniary profit of the directors of a benevolent association. In the absence of state precedent, we may look to federal decisions for guidance. *See State v. Beno*, 99 Wis. 2d 77, 84, 298 N.W.2d 405, 410 (Ct. App. 1980).

When considering whether property is used for the inurement or benefit of private individuals in the tax exempt organization context, *Founding Church of Scientology v. United States*, 412 F.2d 1197 (Ct. Cl. 1969), *cert. denied*, 397 U.S. 1009 (1970), and *World Family Corp. v. Commissioner*, 81 T.C. 958 (1983), provide a helpful survey of principles established in federal cases.

In *Founding Church of Scientology,* the court considered the issue of whether the plaintiff was entitled to an exemption from federal income taxation pursuant to sec. 501(c)(3) of the Internal Revenue Code. *Id.* at 1198. The court noted:

> The term "net earnings" in the inurement-of-benefit clause, as stated in section 501 . . . has been construed to permit an organization to incur ordinary and necessary expenditures in the course of its operations without losing its tax-exempt status.
>
> . . . [P]ayment of reasonable salaries by an allegedly tax-exempt organization does not result in the inurement of net earnings to the benefit of private individuals. Of course, . . . excessive salaries do result in inurement of benefit. As always, whether the salaries paid are reasonable is a question of fact.
>
> It is clear, however, that an organization's net earnings may inure to the benefit of private individuals in ways other than by the actual distribution of dividends or payment of excessive salaries.

*Id.* at 1199 (citations omitted).

In *World Family Corp.*, the United States Tax Court examined the issue of inurement to private individuals who served as officers and directors of a sec. 501(c)(3) tax exempt organization. *Id.* at 959. The officers involved earned a commission for fund raising efforts. In examining the compensation issue, the tax

court declared: "It is well established that an exempt organization is entitled to pay reasonable compensation for services without endangering its exemption. Such payments are permissible even though they are made to the organization's trustees, officers, or founders; the issue is whether the payments are reasonable." *Id.* at 968.

Continuing its analysis, the tax court stated:

> We must consider then whether a commission which may be reasonable when paid to an unrelated third party becomes unreasonable when paid to an individual having a personal or private interest in the payor organization. Although in some circumstances such a finding might be warranted, it is clear that payment to an interested individual does not make a commission unreasonable as a matter of law.

*Id.* at 969. The court also noted: "One factor to consider [in determining the reasonableness of compensation] is whether comparable services would cost as much if obtained from an outside source in an arm's length transaction.' " *Id.* (citation omitted) (brackets in original).

We scrutinize the facts of the present case in light of these principles. As an initial note, both parties concede that reimbursing directors for reasonable out-of-pocket expenses does not militate against the benevolent character of an institution. *See Family Hospital*, 78 Wis. 2d at 323, 254 N.W.2d at 274. Thus, payments received by officers of Friendship Village, Inc. or Freedom Village, Inc. for out-of pocket expenses do not necessarily exclude a tax exemption. Our review of the record indicates that no extraordinary out-of-pocket expenses were paid to the officers of either corporation.

A more contentious issue is whether Mel Erickson, a director of Freedom, Inc., indirectly channeled profits from Freedom, Inc. for his personal gain. FD, Inc., paid Erickson a salary of $16,000 per year up to July 1990. From that date on, Erickson received an annual salary of $40,000 from FLC for serving as its president. Applying the principles of *Founding Church of Scientology* and *World Family Corp.*, we conclude that these fees were reasonable for the services provided. There is no indication that these fees were exorbitant or were in any way an effort to improperly siphon money from the corporations involved. On the contrary, Erickson provided valuable services which were appropriately compensated.

The record further reflects that consulting or management fees were paid by Freedom Village, Inc. to FLC and to Affiliated Consultants, Inc. (an unaffiliated corporation). It is uncontroverted that Affiliated Consultants is owned by a member of the FLC Board, William Eisner. Our review of the management services, however, indicates that they were provided at or below cost. In fact, as a condition for the continued recognition of Freedom Village, Inc. as a sec. 501(c)(3) tax-exempt entity, FLC executed a written promise with the Internal Revenue Service to provide management services to Freedom Village, Inc. at or below cost. Further, the manner in which the management services contract between Freedom Village, Inc. and FLC was drafted convinces us that these services were provided in an "arm's-length transaction." A certified public accountant generated a $70,000 figure for management services based on what he perceived was a fair reflection of the cost to FLC for providing the services as set forth in the management contract. Likewise, our

review of the fees paid to Affiliated Consultants for advertising reveals no impropriety. As noted correctly by the plaintiffs, the fees paid to Affiliated Consultants were comparable to the amounts Freedom Village, Inc. subsequently paid to two unrelated advertising agencies.

## IV. CONCLUSION

In summary, we affirm the trial court's order denying the City's motion to dismiss for failure to state a claim. We reverse, however, the trial court's ruling that Freedom Village, Inc. was not the beneficial owner of Freedom Village as of January 1, 1990. Finally, we affirm the trial court's finding that Freedom Village, Inc. is a benevolent organization and, therefore, is exempt from property taxation pursuant to sec. 70.11(4), Stats.

*By the Court.*—Judgment affirmed in part and reversed in part.