Welfare Building & Loan Association, Respondent, vs. Krieger, Appellant.

*October 14—November 9, 1937.*

The cause was submitted for the appellant on the brief of *Harold M. Baum* of Milwaukee, and for the respondent on that of *Ernst J. von Briesen* of Milwaukee.

MARTIN, J.    There is no issue as to the validity and application of the zoning ordinance requiring side yards.    Section 26.62 of the ordinance provides:

"*Side Yards:* No side yard shall be less than four feet wide for a building two stories or less in height and sixty feet or less in length.    At each additional story height the width of such side yard shall be increased one foot, and for any additional length the width of such side yard shall be further increased at the rate of one foot in fifteen feet.    On a lot improved with two side yards if the southerly or easterly of such yards exceeds the width required by this paragraph by one foot the other side yard may be reduced in width one foot."

Section 26.3 defines the word "lot:"

"*Lot:* A lot is a parcel of land in a single ownership occupied by not more than one building and the accessory buildings or uses customarily incident to it, including such open spaces as are required by this chapter."

Section 26.73 relates to certificates of occupancy, and reads as follows:

"It shall be unlawful to use or permit the use of any building or premises or part thereof hereafter created, erected, altered, changed or converted wholly or partly in its use or structure until a certificate of occupancy to the effect that

the building or premises or the part thereof so created, erected, altered, changed or converted and the proposed use thereof conform to the provisions of this chapter shall have been issued by the inspector of buildings. It shall be the duty of the inspector of buildings to issue a certificate of occupancy within ten days after a request for the same is filed in his office by any owner of a building or premises affected by this chapter, provided said building or premises, or the part thereof so created, erected, altered, changed or converted, and the proposed use thereof, conforms with all the requirements of Article 4 of this chapter."

The ordinance further provides:

"In case any building or structure is erected, constructed, reconstructed, altered, converted or maintained or any building, structure, land or premises is used in violation of this ordinance, the proper city officers or the inspector of buildings, in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance or use, to restrain, correct or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business or use in or about such premises, or to petition the proper court to order the removal of any building or structure erected in violation of any ordinance."

The ordinance provides certain penalties for violation.

The following facts are alleged: That in 1928, Michael Shapiro became the owner of lots 7, 8, and 9, in A. W. Richter's Subdivision No. 2, in the city of Milwaukee; that each lot had a frontage of 43.13 feet on Twenty-Seventh street. That Shapiro began the construction of an eight-family apartment on lot 9 under permit No. 4,823; that Shapiro secured permits for the construction of two apartments, one of which apartments was to be built partly on lots 9 and 8, and the other apartment was to be built partly on lots 7 and 8; that permits for such construction were issued by the building department of the city of Milwaukee;

that at this time Shapiro executed mortgages to the Welfare Building & Loan Association, representing construction loans; that Exhibit "B," attached and made a part of the complaint, shows the location of the buildings as authorized by the permits; that proper occupancy permits were issued, and all zoning ordinances would have been complied with had the buildings been built according to such plans.

It is further alleged that, instead of building in the location outlined in Exhibit "B," Shapiro erected one building on lot 9 and the other on lot 7; that the building inspector, upon learning that the buildings were so located, called Shapiro's attention to the fact that there would not be proper yard space on each side of lots 7 and 9, but Shapiro being the owner of the three lots, the building department ruled that the necessary side yards were furnished by lot 8. It is alleged that Shapiro agreed and allocated portions of lot 8 for side-yard purposes, so as to comply with the ordinance; that, after the buildings on lots 7 and 9 were completed, Shapiro executed a mortgage on lot 8 to the defendant Krieger; that Krieger subsequently foreclosed, but did not complete the foreclosure proceedings; instead, he took a quitclaim deed from the then owner of lot 8. It is further alleged that Krieger, prior to taking the mortgage and the quitclaim deed, had examined the property and knew the location of the buildings on lots 7 and 9; that thereafter, in April, 1931, the defendant Krieger made an application for a permit to build an apartment on lot 8; the building inspector denied the application, but Krieger then appealed from the decision of the building inspector to the board of appeals; that the decision of the building inspector was sustained by the board of appeals, and Krieger took no appeal from this decision. It is further alleged that the building inspector made a claim that the sale of lot 8 to Krieger voided the occupancy permits on lots 7 and 9, and that he threatened a prosecution under the ordinance. It is also alleged that the

defendant Krieger threatened an action to quiet the title. The prayer of the, complaint is that both be enjoined. It should be stated that the agreement with Shapiro to allocate portions of lot 8 was not reduced to writing, and there is no record thereof in the office of the register of deeds. However, no appeal was taken from that ruling of the building department.

The appellant contends:

(1) That the zoning ordinance requiring side yards, being in effect at the time of the execution of plaintiff's mortgages, it was incumbent upon plaintiff to procure from Shapiro, the then owner of the three lots, a grant of portions of lot 8 for side-yard purposes for the buildings on lots 7 and 9, and to record such grant or to have included those portions of lot 8 in its mortgage, and that, due to plaintiff's neglect in protecting itself, it has no standing in a court of equity.

(2) That appellant is the owner and holder of the legal title to lot 8; and that plaintiff, not having any legal title to any part of lot 8, cannot obtain an injunction restraining appellant, his assigns, executors, and administrators, from bringing any quiet-title suit or any other action affecting the title to the north 5.75 feet and the south 4.5 feet of lot 8, or from using said portions of said lot for purposes other than as side yards for the buildings on lots 7 and 9.

The respondent makes no claim of legal title to any part of lot 8. It does claim the right to use parts thereof for side-yard purposes. The appellant's demurrer admits the material facts alleged in the complaint. It is alleged that plaintiff was threatened by actions from two sources before bringing this action. The complaint does specifically allege that Shapiro had dedicated the parts of lot 8 above mentioned for the benefit of the plaintiff and the city; that appellant knew the location of the apartment buildings; that portions of lot 8 were allocated for side-yard purposes, and that the board of appeals had confirmed the decision of the

building inspector. The appellant took no appeal from the decision of the board of appeals as provided for by sec. 62.23 (8) (f), Stats.

The general rule is thus stated in 19 C. J. p. 939, § 145:

"One who purchases land with notice, actual or constructive, that it is burdened with an existing easement takes the estate subject to the easement, and will be restrained from doing any acts, which will interfere with the benefit and enjoyment of the easement to the full extent to which the party having a right thereto, who has not parted with or impaired the same, was entitled at the time when such purchaser bought." See cases cited in footnote 98, 19 C. J. p. 939.

In *Lincoln Trust Co. v. Williams Bldg. Corp.* 229 N. Y. 313, 318, 128 N. E. 209, 210, the court said:

"Therefore the general and well-nigh universal rule should be applied, viz., that where a person agrees to purchase real estate, which, at the time, is restricted by laws or ordinances, he will be deemed to have entered into the contract subject to the same. He cannot thereafter be heard to object to taking the title because of such restrictions."

In *Miller v. Milwaukee Odd Fellows Temple,* 206 Wis. 547, 557, 240 N. W. 193, 197, the court said:

"It appears that the present and future use of the premises in question will be regulated and affected by a certain zoning ordinance adopted by the city of Milwaukee in November, 1920. The court found that the plaintiff was familiar with the existence and provisions of and intended to make the purchase subject to the provisions of the ordinance in question." Citing *Lincoln Trust Co. v. Williams Bldg. Corp., supra; Isaacs v. Schmuck,* 245 N. Y. 77, 156 N. E. 621; *Wheeler v. Sullivan,* 90 Fla. 711, 106 So. 876; 57 A. L. R. 1253, "Zoning Ordinance or Statute," p. 1424.

From the facts alleged, it appears that the defendant Krieger secured his quitclaim deed to lot 8 in 1931, three years after the apartments were erected. He then made an

application to build an apartment on all of lot 8. The building inspector ruled that he could not build on all of lot 8 because the north and south parts of said lot were already dedicated as yard space for the apartments on lots 7 and 9. He appealed from this decision to the board of appeals, which board on February 12, 1932, affirmed the decision of the building inspector. No appeal has been taken from this decision. We conclude that the complaint did state a cause of action and that the order overruling appellant's demurrer must be affirmed.

*By the Court.*—Order affirmed, and cause remanded for further proceedings.