Gerald KALLAS, Plaintiff-Appellant,

v.

B&G REALTY, Defendant-Respondent.

Court of Appeals

*No. 91–2016. Submitted on briefs April 7, 1992.—Decided May 12, 1992.*

(Also reported in 485 N.W.2d 278.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Lynn Adelman* of *Adelman, Adelman & Murray, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Stephen P. Juech* and *Charlene A. Wallace* of *Frisch Dudek, Ltd.* of Milwaukee.

Before Moser, P.J., Fine and Cane, JJ.

FINE, J.   Gerald Kallas brought this action against the Secretary of the Wisconsin Department of Transportation and B&G Realty seeking an order that would permit him to maintain a sign that he erected on a piece of land for which he obtained a sign easement from the land's owner. Kallas also sought unspecified compensatory damage. The Secretary was dismissed from the case

by stipulation. Kallas appeals from the trial court's grant of summary judgment dismissing his complaint against B&G Realty. We affirm.

## I.

The facts are undisputed. Kallas owns an automobile dealership in Oak Creek, Wisconsin. B&G Realty owns a motel, also in Oak Creek. Both businesses are near, but do not abut, a nearby interstate highway, I-94. On July 7, 1987, Kallas and B&G Realty were granted sign easements for their respective businesses from the owner of land that did abut I-94, Rawson Enterprises, Inc. Each easement recited that it was for the benefit of the parties' businesses located on nearby real estate. The easements were, accordingly, "easements appurtenant" to the land occupied by those businesses, *see* RESTATE-MENT OF PROPERTY § 453 (1944) ("An easement is appurtenant to land when the easement is created to benefit and does benefit the possessor of the land in his use of the land."), rather than "easements in gross," *see* RESTATEMENT OF PROPERTY § 454 ("An easement is in gross when it is not created to benefit or when it does not benefit the possessor of any tract of land in his use of it as such possessor."). The lands on which Kallas and B&G Realty operated their businesses are the "dominant tenements," *see* RESTATEMENT OF PROPERTY § 456 ("The term 'dominant tenement' denotes that the possessor of the land to which it is applied has, as appurtenant thereto, an easement over other land."); the Rawson Enterprises' property is the "servient tenement," *see* RESTATEMENT OF PROPERTY § 455 ("The term 'servient tenement' signifies that the possessor of the land to which it is applied is subject to an easement."). *See also*

*In Re Parcel of Land v. Darnell,* 165 Wis. 2d 235, 244, 477 N.W.2d 333, 338 (Ct. App. 1991).

B&G Realty executed its easement agreement with Rawson Enterprises first, and Kallas executed its easement agreement with Rawson immediately thereafter.[1] The easement between Kallas and Rawson Enterprises provided, *inter alia,* that:

> [Rawson] shall not install or permit any other party to install other signs on the Premises. [Rawson] shall not install or permit any other party to install on [Kallas]'s easement any sign that might visually obstruct [Kallas]'s signs or serve to interfere with [Kallas]'s right to secure the necessary licenses and permits for the erection, operation and removal of its sign.

B&G Realty recorded its easement on July 13, 1987, and a permit for a B&G sign was obtained from the Department of Transportation on April 8, 1988. Kallas recorded his easement on July 22, 1987. Although he erected his sign on December 17, 1987, Kallas did not get a permit for it from the Department of Transportation. Under section 84.30(4)(c)2, Stats., no sign on land abutting an interstate highway may be "less than 500 feet" from any other sign on land abutting the highway. B&G Realty's sign was erected in April of 1988, approximately 315 feet from Kallas' sign. On February 24, 1989, the Department of Transportation ordered Kallas to remove his sign. The order was affirmed by the Commissioner of Transportation on August 23, 1989. On May 17, 1989, B&G Realty purchased the land on which both signs

---

[1]B&G Realty's General Counsel, who prepared the B&G/ Rawson easement agreement for B&G Realty, and who was one of those who signed that agreement on B&G's behalf, witnessed the Kallas/Rawson easement agreement.

were erected, "[s]ubject to covenants, restrictions, easements and special assessments of record."

Kallas' complaint against B&G Realty alleged in essence that B&G Realty, as successor to Rawson Enterprises, was obligated not to interfere with Kallas' right to maintain his sign.[2] In dismissing the complaint, the trial court ruled that B&G's first recordation of its easement gave that easement priority under section 706.08(1)(a), Stats., and that since under section 84.30(4)(c)2, Stats., the two easements were in irreconcilable conflict, "Kallas' easement was invalidated once B&G recorded its easement" on July 13, 1987. Alternatively, the trial court concluded that B&G Realty's easement did not merge into its estate when it purchased the property subject to the easements because of "considerations of equity and fairness."

## II.

A party is entitled to summary judgment if there are no genuine issues of material fact that require a trial and the party "is entitled to a judgment as a matter of law." Section 802.08(2), Stats. The facts here are, as already noted, undisputed, and our review of a trial court's grant of summary judgment is *de novo, see Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

As we have seen, B&G Realty obtained its easement on the Rawson Enterprises' property before Kallas obtained his easement. B&G Realty also recorded its easement first. Thus, B&G's easement, and its priority, was already of record when Kallas erected his sign in

---

[2]Rawson Enterprises is not a party to this action.

December of 1987. Section 706.08(1)(a), Stats., relied upon by the trial court, provides:

> Every conveyance . . . which is not recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof whose conveyance shall first be duly recorded.

Although not strictly applicable here because B&G Realty was not a "subsequent purchaser," section 706.08(1)(a) does reflect the law's determination that those who first record their interests in land have priority over those with competing interests. Since "[a]ll persons dealing with land are charged with knowledge of'the contents of any instrument recorded at length," *Reilly v. Arnsmeier,* 220 Wis. 564, 570, 265 N.W. 713, 716 (1936), Kallas was on notice that if the two easements were inconsistent with one another, B&G's easement would have priority. Kallas was also on notice that the two easements *were* inconsistent with one another by virtue of section 84.30(4)(c)2, Stats. *See Rupert v. Home Mut. Ins. Co.,* 138 Wis. 2d 1, 13, 405 N.W.2d 661, 665 (Ct. App. 1987) (statutes provide constructive notice of their provisions). Kallas argues, however, that the easements were adjoining interests and not for "the same real estate or any portion thereof," sec. 706.08(1)(a). We disagree. The Rawson property was not only the servient tenement for both easements but the privileges granted by those easements could not both be exercised because of the 500-foot limitation created by section 84.30(4)(c)2. Kallas' easement was thus ineffectual *vis-a-vis* B&G's easement. Accordingly, as against Kallas, B&G Realty had the right to exercise the privilege granted by its easement.

Kallas also contends that B&G Realty's subsequent purchase of the property obligates B&G to remove the B&G sign. He argues that when B&G Realty purchased the property from Rawson Enterprises, "B&G took the property subject to all easements and encumbrances of which it had notice." We agree; the May 17, 1989, deed so provided. *See also Welfare Building & Loan Assoc. v. Krieger,* 226 Wis. 105, 110, 275 N.W. 891, 893 (1937). This, however, did not restrict B&G's use of the property since Kallas' easement, to which the property was subject, was invalid as against B&G. *See Von Meding v. Strahl,* 30 N.W.2d 363, 369 (Mich. 1948) (" 'subject to all easements' " in conveyance means " 'subject to all *valid* easements' ") (emphasis in original).

Kallas also argues that B&G Realty's easement was extinguished by merger when B&G Realty purchased the servient Rawson property. Although this proposition is generally correct, *see Mabie v. Matteson,* 17 Wis. 1, 10, [*9] (1863) (" 'no man can, technically, be said to have an easement in his own land' ") (citation omitted), it does not mean that B&G Realty's right to erect and maintain its sign on that property was extinguished by the merger. As has been explained:

> An easement, by definition, is an interest in land which is in the possession of another. This prerequisite situation ceases to exist when the owner of an easement in gross becomes the owner of the servient tenement or when the dominant and servient tenements of an appurtenant easement come into the same ownership. In each instance, the owner of the easement, having become the owner of the servient tenement, has, as such owner of the servient tenement, rights of user greater than those comprised in

419

the easement itself. The lesser is swallowed by the greater and the easement is, under the majority view, permanently terminated by this merger.

3 R. POWELL & P. ROHAN, POWELL ON REAL PROPERTY ¶ 425 at 34-274 to 34-275 (1991 rev.) (footnotes omitted). Stated another way, rights created by an easement are only extinguished subsequent to "unity of ownership of estates in the dominant and servient tenements to the extent to which the uses which could have been made prior to the unity by virtue of ownership of the estate in the dominant tenement can be made after the unity by virtue of ownership of the estate in the servient tenement." RESTATEMENT OF PROPERTY § 497 (1944). Thus, although "privileges of use once authorized by [the easement] still exist, they are no longer incidental to the ownership of the dominant tenement but have become incidents of the ownership of what was formerly the servient tenement." *Id.,* comment a. Accordingly, the owner of an easement retains rights encompassed by the easement despite the owner's subsequent purchase of the servient estate. Thus, if X owns parcel 1, the dominant tenement, but not parcel 2, the servient tenement, and later purchases parcel 2, the easement will be extinguished, but X will, of course, still have the right to traverse parcel 2, which he now owns. If X later sells parcel 1, the purchaser takes the property without the right to traverse parcel 2, unless X also grants to the purchaser an easement. *See Von Meding,* 30 N.W.2d at 367. Similarly, if X does not own parcel 1, the dominant tenement, but owns parcel 2, the servient tenement, X's purchase of parcel 1 will also extinguish the easement. *See ibid.* If X later sells parcel 2 without reserving an easement, his right to traverse parcel 2 will be lost. *See ibid.*

B&G Realty's rights under its easement from Rawson Enterprises were, by virtue of its priority, superior to Kallas' easement from Rawson. Accordingly, B&G's right to maintain its sign survived B&G's purchase of the property.

*By the Court.*—Judgment affirmed.