Howard R. MILLEN and Kathryn M Millen, Plaintiffs-Appellants,†

v.

James THOMAS and Charlotte H. Thomas, Defendants-Respondents.

Court of Appeals

*No. 95–1803. Submitted on briefs February 16, 1996.—Decided April 17, 1996.*

(Also reported in 550 N.W.2d 134.)

†Petition to review denied.

675

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *George W. Love* of *Love, Voss, Murray & Goeschko* of Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James Ward* of *Congdon, Ward & Walden, S.C.* of Waukesha.

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   In this action to quiet title, the trial court dismissed at summary judgment Howard R. and Kathryn M. Millen's action to declare void an easement across their property which provides access to Beaver Lake from property owned by Charlotte H. Thomas.[1] The trial court rejected the Millens' claim that the merger of the legal description of the property with the easement right with the legal description of other surrounding property owned by Thomas improperly expanded the easement. The court also ruled that the easement was not an illegal nonconforming use under the Waukesha County Shoreland and Floodland Protection Ordinance. The court later denied the Millens' motion for reconsideration. We conclude that the trial court's grant of summary judgment to Thomas was proper and affirm.

## THE LAW OF EASEMENTS GENERALLY

Before presenting the facts, we recite some black letter easement law. An easement is an interest in land which is in the possession of another. *Kallas v. B&G Realty*, 169 Wis. 2d 412, 419, 485 N.W.2d 278, 281 (Ct. App. 1992). An easement creates two distinct property interests: the dominant estate, which enjoys the privileges granted by an easement; and the servient estate, which permits the exercise of those privileges. *See Krepel v. Darnell*, 165 Wis. 2d 235, 244, 477 N.W.2d 333, 338 (Ct. App. 1991).

---

[1] Although both James and Charlotte H. Thomas are named as parties in this action, the property at issue is in Charlotte's name only.

There are a number of ways in which an easement may terminate. For example, an easement is generally extinguished when the dominant and servient estate come under the same ownership. *See Kallas,* 169 Wis. 2d at 419-20, 485 N.W.2d at 281. Also, an easement may be terminated by the completion or cessation of the particular purpose for which it was granted. *See Niedfeldt v. Evans,* 272 Wis. 362, 364, 75 N.W.2d 307, 308 (1956). Similarly, a right of way of necessity continues only so long as the necessity exists and until another lawful way has been acquired. *Id.* at 364-65, 75 N.W.2d at 308-09; *Ludke v. Egan,* 87 Wis. 2d 221, 228, 274 N.W.2d 641, 645 (1979). However, the rule that such a right ceases when the necessity ceases has no application to easements acquired by express grant. *Niedfeldt,* 272 Wis. at 365, 75 N.W.2d at 309. An easement granted by express grant "cannot be defeated by showing that the owners have another convenient and accessible way of going to and from their premises." *Id.* (quoted source omitted).

## FACTS

The facts of this case, although undisputed, present an involved series of land transactions. Understanding these facts is made more difficult because we are attempting through written words to present a visual picture of the physical juxtaposition of the various parcels.

Claire Krumme was the original owner of the two parcels which ultimately became the dominant and servient estates: a lakefront parcel on Beaver Lake, south of Beaver Lake Road, which became the servient estate; and a one-half acre off-lake parcel, north of Beaver Lake Road, which became the dominant estate.

At this same time, Thomas owned three parcels: a lake front parcel to the west of and abutting Krumme's lake front parcel; and two off-lake parcels on the north side of Beaver Lake Road. One of these off-lake lots is a ten-acre parcel which includes the Thomas residence; the other is an adjoining twelve-acre vacant parcel to the east. These two off-lake lots surround the Krumme off-lake lot on the north, east and west sides, while Beaver Lake Road is the southern boundary of all the off-lake lots.

On August 24, 1979, the Millens purchased Krumme's lakefront lot but granted Krumme a twelve-foot wide easement "for ingress and egress from Beaver Lake Road to Beaver Lake" along the western boundary of the Millens' lot. The effect of this easement was to give Krumme lake access from her remaining off-lake parcel on the north side of Beaver Lake Road. Thus, the Millens' lakefront lot became the servient estate and Krumme's off-lake lot became the dominant estate under the law of easements.

The Millens' grant of the easement also contained a provision that stated, "In the event that the grantee, her heirs, successors and assigns are precluded from using this easement by State or local law, said easement shall become null and void."

Following this transaction, on August 28, 1979, the Waukesha County Shoreland and Floodland Protection Ordinance was amended to prohibit "pyramiding" of lake access. The ordinance defines "pyramiding" as follows:

> The act of obtaining or providing access to public bodies of water across private lots or lands in a manner which increases the number of families which have access to that water to a degree greater

than what would occur with individual riparian owners having individual lots fronting on the water. The effect of pyramiding is to funnel backlot development from offshore lots or residences via a narrow parcel of land to provide access to the water. Publicly owned access points shall not fall within this definition.

WAUKESHA COUNTY, WIS., SHORELAND AND FLOODLAND PROTECTION ORDINANCE § 2.02(54a).

In November 1980, Krumme conveyed her remaining off-lake dominant estate to Thomas together with the easement. As a result of this transaction, Thomas now owns all of the off-lake property involved in this case, plus her lakefront property which abuts the easement on the Millens' lakefront property.

Thomas later built a pier into Beaver Lake at the end of the easement, the event which appears to have precipitated this litigation. The Millens complained. The matter was referred to the Waukesha County Corporation Counsel's office, which originally opined that the easement was void under the Shoreline and Floodland Protection Ordinance. However, when the corporation counsel later learned that Thomas also owned the lakefront property abutting the easement, it changed its opinion, concluding that the easement "did not increase access to the lake and thus there was no pyramiding."

Thereafter, in December 1984, Thomas executed a quit-claim deed to herself by which she merged the legal description of the off-lake dominant estate parcel which she had purchased from Krumme with the surrounding off-lake property which she already owned. This transaction did not pertain to Thomas's lakefront lot.

In October 1992, the Millens commenced this declaratory action to quiet title, asking the trial court to declare the easement void. The Millens contended that the easement violated the antipyramiding provisions of the Shoreland and Floodland Protection Ordinance. Later, the Millens amended their complaint to further allege that the 1984 merger of the Thomas off-lake properties constituted an illegal expansion of the original easement. Alternatively, the Millens alleged that the failure of Krumme or Thomas to use the easement for more than twelve consecutive months violated the nonconforming use provisions of the county ordinance and § 59.97(10)(a), STATS.

Thomas and the Millens both moved for summary judgment. On February 6, 1995, the trial court rendered a written decision granting Thomas's motion. The court concluded that the easement was not illegal pyramiding under the ordinance and thus was not a nonconforming use of the property. The court also concluded that the easement had not been illegally expanded by the merger of the legal descriptions. Later, the court denied the Millens' motion for reconsideration and entered its final judgment on June 28, 1995. The Millens appeal.

DISCUSSION

Our review of the trial court's grant of summary judgment is de novo. *Kallas,* 169 Wis. 2d at 417, 485 N.W.2d at 280. Summary judgment is appropriate when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Section 802.08(2), STATS. When both parties move by cross-motions for summary judgment, it is the equivalent of a stipulation of facts permitting the trial

court to decide the case on the legal issues.[2] *Friendship Village, Inc. v. City of Milwaukee*, 181 Wis. 2d 207, 219, 511 N.W.2d 345, 350 (Ct. App. 1993).

The Millens first contend that Thomas's subsequent merger of the dominant estate with the surrounding land she already owned illegally expanded the dominant estate such that the continued use of the easement is precluded as a matter of law.[3]

The Millens rely on *Reise v. Enos,* 76 Wis. 634, 45 N.W. 414 (1890), to support their argument that the easement should be extinguished because it can "be used only for the benefit of the dominant estate for which [it] was originally created." The Millens quote the following language from *Reise* in support:

> [I]t appears to be equally well settled in the law that where, by one and the same deed, for one consideration, a man conveys a parcel out of a larger tract of land, and grants a right of way to him and his heirs in his own land obviously useful and

---

[2] We share the concern expressed by our colleague in the concurrence that this principle of summary judgment law is so broadly stated that it may suggest that a trial court is always free to grant summary judgment where both parties have moved for that relief. Rather, we conclude that the summary judgment methodology is the same whether one party, or multiple parties, move for summary judgment. That methodology is well known—the court may grant summary judgment if no material issue of fact is presented by the parties' respective evidentiary facts.

[3] The Millens acknowledge that the easement was not an easement in gross limited to Krumme's use. They concede that the easement was granted as an easement appurtenant to the original one-half acre parcel, granted for the purpose of ingress and egress to Beaver Lake. *See Kallas v. B&G Realty,* 169 Wis. 2d 412, 415, 485 N.W.2d 278, 279 (Ct. App. 1992).

necessary to the beneficial enjoyment of the land granted, the grantee takes the right of way therein as appurtenant to the land granted only, and has no right to use it as appurtenant to other land afterwards acquired. . . .

. . . And it is well settled that, if a person has a right of way over the land of another to a particular close, he cannot enlarge it or extend it to other closes.

*Id.* at 638-39, 45 N.W. at 415. The Millens maintain that this language precludes Thomas from using the easement because the merger of the properties illegally expanded or enlarged the dominant estate.

While the *Reise* language facially appears to support the Millens' argument, a close examination of the facts of the case reveals otherwise. In that case, Cook originally owned lots 3 and 4 in the then Village of Waukesha. *Id.* at 636, 45 N.W.2d at 414. Cook sold lot 3 to Reise and also granted Reise an easement over lot 4 to the west so that Reise could have ingress and egress to Clinton Street. *Id.* Later, Reise acquired lot 2 to the east. *Id.* Subsequently, Reise sold the dominant estate, lot 3, retaining ownership of lot 2 to the east and reserving the easement across lot 4. *Id.* Thus, the easement against lot 4 no longer abutted the remaining property owned by Reise. *Id.* at 636-37, 45 N.W.2d at 414.

Under those facts, the supreme court held that the easement was no longer operative because the easement on lot 4 was being used to benefit lot 2, land which was not part of the original dominant estate and which was not appurtenant to the easement. *See id.* at 638-39, 45 N.W. at 415. Rather, the easement was appurtenant to lot 3, land which Reise no longer owned. As such, the court concluded that the easement

could not "be enjoyed separate and distinct from the lot to which it belongs," nor could Reise enlarge the right and subject the servient estate to the added burden of lot 2. *Id.* at 639, 45 N.W. at 415.

Here the facts are different. The original dominant estate, albeit now part of a larger parcel, still abuts the servient estate owned by the Millens. We do not read *Reise* to say that if additional property is added onto the land which is appurtenant to the easement, the easement ceases to exist. Rather, *Reise* merely requires the easement to be appurtenant to the dominant estate. That requirement is satisfied in this case.

We recognize that an easement for a specified purpose may not be enlarged such that an added burden is placed upon the servient estate. *See S.S. Kresge Co. v. Winkelman Realty Co.*, 260 Wis. 372, 376-77, 50 N.W.2d 920, 921-22 (1952). However, that inquiry focuses on the actual burden imposed on the servient estate. And the answer does not lie in the mere fact that the owner of the dominant estate now owns other abutting lands.

We next address the Millens' argument that the easement was a nonconforming pyramiding use under the Waukesha County Shoreland and Floodland Protection Ordinance which has lapsed because of discontinued use of the easement for twelve consecutive months.[4] In addressing this claim, we will

---

[4] The concurrence contends that we need not address this issue on the merits because an easement is not subject to the law of nonconforming use. We understand this to mean that the Millens should have challenged Thomas's use, not the easement itself—a distinction which the concurrence admits is "subtle." Concurrence at 689. However, Wisconsin case law has expressly

assume arguendo that the original grant of the easement to Krumme by the Millens would have been illegal pyramiding had the ordinance then been in effect.[5]

The Millens rely on *Gabe v. City of Cudahy*, 52 Wis. 2d 13, 187 N.W.2d 874 (1971). There, the plaintiffs brought a declaratory action seeking a ruling that their operation of a commercial sand and topsoil operation was a continuing valid nonconforming use. *Id*. at 15-17, 187 N.W.2d at 875-76. In addressing whether the plaintiffs had met their burden of proof to show a continuing valid nonconforming use, the supreme court said:

> It was plaintiffs' burden to prove by the preponderance of the credible evidence that in 1957 when the ordinance was passed, the farm was actually and actively being used for the same purpose for which it now is being used, to wit, a commercial sand and topsoil operation. Further, the plaintiffs had to prove that such use was continuous from 1957 to the present. Any twelve-month interval from 1957 to the present, during which the use ceased, would deprive them of their right to resume the nonconforming use of the property.

recognized that, in an appropriate case, an abuse of an easement use can result in a forfeiture of the easement, not merely an injunction against the improper use. *See Vieth v. Dorsch*, 274 Wis. 17, 19-20, 79 N.W.2d 96, 98 (1956).

[5] The ordinance provides that nonconforming uses of land "shall conform to the use regulations of the applicable district" when the nonconforming use is discontinued for a period of twelve consecutive months during a three-year period. WAUKESHA COUNTY, WIS., SHORELAND AND FLOODLAND PROTECTION ORDINANCE § 3.15(2)(B)3.

*Id.* at 17, 187 N.W.2d at 876.

Relying on this language, the Millens contend that Thomas, the party claiming the valid nonconforming use, failed to meet her burden of proof. However, as with the prior issue, we conclude that the Millens overextend the language of the decision on which they rely in derogation of the facts. In *Gabe*, the supreme court was not saying that a party claiming a nonconforming use has the burden of proving the continued vitality of such use in every case. Rather, the supreme court was saying that when the issue is the sufficiency of the evidence, *a plaintiff claiming a nonconforming use* in a declaratory judgment action has the burden to prove his or her claim. *See id.* This language recognizes nothing more than the well-accepted legal principle that the plaintiff bears the burden to prove his or her claim.

Were the Millens' argument correct, the burden in this case would not have been on the Millens, who commenced the action and sought the declaratory ruling invalidating the easement, but rather on Thomas, who was hailed into court to defend the action. This argument stands conventional civil procedure and burden of proof principles on their heads.

Here, as we have noted, both parties moved for summary judgment. That procedure allowed the trial court, under the undisputed facts of this case, to adjudicate the matter at the summary judgment level. As the plaintiffs in the action, the Millens carried the burden not only to show that Thomas held a nonconforming use but also that such use had been discontinued for the requisite period of time. The

Millens' summary judgment proofs on this question are silent. As such, the Millens failed to carry the burden as to this allegation of their complaint, and Thomas was entitled to summary judgment on this claim.

We also agree with Thomas that the easement in its present form does not violate the antipyramiding provision of the ordinance. When Thomas merged the original dominant estate into her surrounding lands, the effect *under the existing facts* was not to increase or enlarge the use or nature of the easement. The easement provides lake access to Thomas, who already has access to the lake via her existing lakefront lot. Thus, the easement does not "increase[ ] the number of families which have access . . . to a degree greater than what would occur with individual riparian owners having individual lots fronting on the water." WAUKESHA COUNTY, WIS., SHORELAND AND FLOODLAND PROTECTION ORDINANCE § 2.02(54a). This, of course, was the very reasoning of the Waukesha County Corporation Counsel when it determined that Thomas's ownership and use of the easement did not constitute pyramiding.

We conclude that the easement did not terminate by operation of law when Thomas merged the legal description of the dominant estate with surrounding property. We further conclude that the Millens failed to prove that Thomas discontinued the use of any nonconforming use. We also conclude that Thomas's present ownership and use of the easement do not constitute a violation of the easement.[6]

---

[6] We stress that our ruling is based on the existing facts as revealed by the summary judgment record. An easement for a specified purpose may not be enlarged such that an added burden is placed upon the servient estate. *S.S. Kresge Co. v.*

*By the Court.*—Judgment affirmed.

BROWN, J. (*concurring* ). I write separately on two issues. First, I write about my understanding of the ramifications of dual motions for summary judgment. Next, I question the majority's treatment of the Millens' argument that this easement is a nonconforming use.

We face bilateral summary judgment motions. The majority thus cites the rule that this is "the equivalent of a stipulation of facts" which permits us (and the trial court) to move right to the legal issues. Majority op. at 680–81.

Because the parties did not dispute the facts in this case, the majority correctly revealed the appropriate standard in this case. Nonetheless, I wish to emphasize that bilateral summary judgment motions do not always imply that the parties are stipulating to the facts. *See Stone v. Seeber*, 155 Wis. 2d 275, 278, 455 N.W.2d 627, 629 (Ct. App. 1990). A trial court, or this court, should not automatically conclude that the parties have stipulated to all the facts when each has filed for summary judgment. Of course, by moving for summary judgment, each party implicitly attests to its theory of the facts. Nonetheless, each party may still contest the factual allegations revealed in the opposing party's motion. *See id.* Therefore, before a trial court, or this court, can safely conclude that no facts are in dispute in these circumstances, the court must independently verify that no material issue

*Winkelman Realty Co.*, 260 Wis. 372, 376-77, 50 N.W.2d 920, 921-22 (1952). If merger of the dominant estate into a larger parcel should later prove to place an enlarged burden on the servient estate, such may well warrant enjoining the use.

of fact remains to be resolved. *See Grotelueschen v. American Family Mut. Ins. Co.*, 171 Wis. 2d 437, 462, 463 n.9, 492 N.W.2d 131, 140-41, 141 (1992) (Abrahamson, J., dissenting) (collecting cases). I do not share the opinion, advocated by some, that Wisconsin case law allows trial by affidavit when both parties move for summary judgment. That view contradicts § 802.08, STATS.

I suppose the law does not prohibit the parties from disagreeing as to the facts but agreeing that the trial court may make findings of fact based upon competing affidavits without benefit of a trial. Although I cannot conceive of a good lawyer ever wanting to do such a thing, if the parties want the trial court to make factual findings without the benefit of the trial court observing the demeanor of the witnesses, that would be their choice. However, the parties should explicitly state their choice as part of a stipulation made in open court and approved by the court. Under no circumstances, however, should a party be held to have waived a trial where facts are in dispute simply because that party moves for summary judgment and the opposing party has also so moved. Such a blanket rule makes absolutely no sense, in logic or in law.

My second concern lies with the answer to the Millens' claim that the easement was a "nonconforming pyramiding use." Majority op. at 683. I agree with the ultimate decision to reject this argument, but I would have followed a shorter, straighter path to get there.

Instead of running through the analysis of whether the Millens had met their burden of showing that this nonconforming use had not been properly maintained, *see* majority op. at 685-86, I would cut the Millens off with the primary question of whether an

easement can be a nonconforming use. Since I believe that an easement can never be a nonconforming use as a matter of law, I would have simply ended the analysis at that point.

In their briefs, the Millens do address this issue. They contend that the county ordinance's definition of an "accessory use" encompasses this type of easement. WAUKESHA COUNTY, WIS., SHORELAND AND FLOODLAND PROTECTION ORDINANCE, § 2.02(81). They specifically argue that this easement is an "accessory use" because it is "subordinate to and customarily incident to the permitted principal use of the property." *Id.*

Their analysis nonetheless presupposes that an easement is a "use" of land. This court, however, has defined an easement as a "permanent *interest* in another's land." *Krepel v. Darnell*, 165 Wis. 2d 235, 244, 477 N.W.2d 333, 337 (Ct. App. 1991) (emphasis added). I understand that this "interest" provides the owner with the "right to a limited use of the land." *See Stoesser v. Shore Drive Partnership*, 172 Wis. 2d 660, 667, 494 N.W.2d 204, 207 (1993). But what a person "uses" an easement for does not provide an answer to what the legal definition of an easement is.

Here, Thomas presumably uses this easement to walk down to the pier that she has installed on Beaver Lake. However, showing that her use of the easement violates the county's rule against pyramiding has no bearing on the analysis of whether what she is walking on is a valid interest in land. Accordingly, I would dismiss the Millens' attempt to apply those principles applicable to nonconforming uses in the analysis of whether this easement is valid.

I acknowledge that this distinction between a "use" of land and an "interest" in land is subtle. Still, I believe that it is supported by the case law and

provides the cleanest and surest answer to this dispute.