Barbara C. Grygiel and Janet M. Nahorn,
Plaintiffs-Appellants,†

v.

Monches Fish & Game Club, Inc.,
Defendant-Respondent,

Karl J. Scheife,
Defendant.

Court of Appeals

*No. 2008AP2028. Submitted on briefs March 5, 2009.
—Decided June 10, 2009.*

2009 WI App 102

(Also reported in 770 N.W.2d 749.)

† Petition to review granted, decision pending.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John A. Rothstein* of *Quarles & Brady, LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Lance S. Grady* of *Grady, Hayes & Neary, LLC*, Waukesha.

Before Brown, C.J., Snyder and Neubauer, JJ.

¶ 1. SNYDER, J. Barbara C. Grygiel and Janet M. Nahorn (together, Grygiel) appeal from an order for a summary judgment dismissing their claims against Karl J. Scheife and Monches Fish & Game Club, Inc. (the Club).[1] Grygiel asserts that the circuit court's interpretation of the law of easements impermissibly expanded the scope and purpose of the easement that

---

[1] Karl Scheife is a member of Monches Fish & Game Club and a party to the litigation; however, he is not participating in this appeal.

provides access over Grygiel's property to the Club's land. We disagree and affirm the order of the circuit court.[2]

## BACKGROUND

¶ 2.  Grygiel's land in Washington county consists of thirty-two acres and meets at one corner with 120 acres owned by the Club. The Club benefits from an easement across Grygiel's property; specifically, the easement is a forty-foot-wide strip of land granted "for the purpose of ingress and egress as a means of access" to the Club's property. In 1990, the Club filed a lawsuit seeking a determination of rights under the written easement. In February 1991, the circuit court issued a decision, holding as follows:

> (1) [The Club] has an easement for ingress and egress to their property over the described 40 foot parcel per the original easement, but has no other interest in the parcel.
>
> (2) [The Club] may not allow parking of vehicles on the easement.

---

[2] The record contains three documents that reflect the decision of the circuit court. In a written "Decision and Order" dated July 9, 2008, and identified as record document No. 49, the court set forth its rationale for denying Grygiel's motion for summary judgment and dismissing Grygiel's claims. An "Order" dated July 15, 2008, and identified as record document No. 50 denies Grygiel's motion for summary judgment and dismisses the complaint on the merits. A second "Order" also dated July 15, 2008, but identified as record document No. 51, repeats the disposition and orders further proceedings on Scheife's counterclaim. Because the three documents restate the same disposition of the issues on appeal, we treat them as a single order.

(3) Vehicles may turn around on the easement providing they do not go off the 40 foot easement.

(4) The easement may be used by members of [the Club], its invitees, service vehicles, and emergency vehicles.

(5) [The Club] may not extend the use of the easement to any other parties than those named in the preceding paragraph.

(6) [The Club] may improve its roadway upon the parcel described in the easement but the improvements shall only be for purposes of ingress and egress.

In its rationale, the circuit court stated that the Club "cannot grant the right to use this easement as a means of gaining access to other properties by parties who are not using [the Club's] property." The court stated that the Club "has no right to grant use of the easement to some farmer who is not going onto [the Club's] lands for any purpose but simply using the easement to get to his own property."[3]

¶ 3. In November 2006, Scheife and several others were hunting on a forty acre parcel adjacent to the Club's property. This forty acre parcel, along with an additional 103 acres to the south, is owned by the Unrein family. Scheife rents a home on the Unrein property, and his lease gives him hunting privileges on all of the Unrein land. He is also a member of the Club and hunts there about twelve times a year.

¶ 4. On November 24, 2006, Scheife and several other hunters used the easement to get to the Club and,

---

[3] The lawsuit, initiated in 1990 by the Club, was in response to Grygiel's complaints that neighboring farmers were using the easement to transport farm vehicles up the road and onto their farmland. The farm implements "rutted [the road] so badly" that the road "constantly" needed repair.

from the Club's property, they crossed to hunt on the adjacent Unrein land. It is undisputed that some of the hunters with Scheife were not members of the Club. It is also undisputed that the hunters did not hunt on Club property that morning, but rather parked at the Club and went over onto Unrein property to hunt. Afterward, they went to Scheife's home and a member of the hunting party drove Scheife off of Unrein property and back around to the easement, with the intention of crossing the easement to retrieve Scheife's truck from the Club's property. When they approached, they saw that Grygiel had blocked their path across the easement. Grygiel then called the sheriff's department and a deputy arrived shortly thereafter. Scheife then retrieved his car from the Club.

¶ 5. Grygiel sued the Club and Scheife for violation of the 1991 judgment, trespass, and breach of the easement contract. Grygiel moved for partial summary judgment, seeking a declaration that (1) the 1991 judgment was binding on the parties, (2) the Club did not have the right to grant use of the easement to third parties who sought access to property other than the Club's, and (3) the Club members themselves could not use the easement to access any property other than the Club's. The court heard arguments on the motion and, in a decision filed February 5, 2008, held that questions of fact precluded summary judgment.

¶ 6. On March 28, 2008, Grygiel filed a new motion for summary judgment, asserting that no material facts were in dispute and seeking judgment as a matter of law. The circuit court held a hearing on the motion in April and in an oral ruling dismissed Grygiel's cause of action for enforcement of the 1991 judgment. The court took arguments on the remaining issues under advisement and subsequently issued a written

order dismissing the trespass and breach of easement claims. Grygiel followed with this appeal.

## DISCUSSION

¶ 7.   All of Grygiel's claims were resolved by summary judgment in the circuit court. We review a circuit court's order granting summary judgment de novo, applying the same methodology as the circuit court. *See City of Janesville v. C.C. Midwest, Inc.*, 2007 WI 93, ¶ 13, 302 Wis. 2d 599, 734 N.W.2d 428. We affirm a summary judgment when there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. *See Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶ 16, 291 Wis. 2d 283, 717 N.W.2d 17. Grygiel moved for summary judgment, but the court sua sponte granted judgment to the Club. A circuit court may grant summary judgment in favor of the nonmoving party if the nonmoving party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(6) (2007–08).[4] Here, the parties generally agree that there are no material facts in dispute; rather, the dispute involves the application of relevant law to the facts.

¶ 8.   Grygiel argues that the circuit court either misconstrued or ignored the holding in *Millen v. Thomas*, 201 Wis. 2d 675, 550 N.W.2d 134 (Ct. App. 1996), by giving the dominant estate the power to expand an easement against the wishes of the servient estate and, further, that civil trespass law prohibits the use of the easement by the Club's members when the intent of the member is to access non-Club property. Grygiel argues

---

[4] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

that the circuit court's decision departed from established property law principles. An easement is an interest in land that is in the possession of another. *Kallas v. B&G Realty*, 169 Wis. 2d 412, 419, 485 N.W.2d 278 (Ct. App. 1992). It creates two separate property interests: the dominant estate, which enjoys the privileges granted by the easement, and the servient estate, which permits the exercise of those privileges. *Wendt v. Blazek*, 2001 WI App 91, ¶ 10, 242 Wis. 2d 722, 626 N.W.2d 78. The deed granting the easement defines the relative rights of the landowners. *Gojmerac v. Mahn*, 2002 WI App 22, ¶ 24, 250 Wis. 2d 1, 640 N.W.2d 178. It is the essence of an appurtenant easement that it exists for the benefit of the dominant estate only. *Id.*, ¶ 22.

¶ 9. Grygiel also offers extensive case law, mostly from foreign jurisdictions, and treatises on property law to emphasize that an easement "may not be used for the benefit of property other than the dominant estate." *See, e.g.,* RESTATEMENT (THIRD) PROPERTY: SERVITUDES § 4.11 (2000). Indeed, the "classic rule" is that "an easement may only be used to benefit the dominant parcel [and] may not be used to access an adjacent, nondominant parcel." Pamela McClaran, *Extending the Benefit of an Easement: A Closer Look at a Classic Rule—Brown v. Voss*, 105 Wn. 2d 366, 715 P.2d 514 (1986), 62 WASH. L. REV. 295, 295–96 (1987). A strict interpretation of that rule leads to the conclusion that any extension of the benefit to a nondominant parcel is a misuse and, accordingly, a trespass. *Id.* at 296.

¶ 10. Grygiel's primary argument is that the circuit court's reliance on *Millen* flew in the face of controlling law. The Millens sought to declare void an easement across their property that gave neighboring property owner Thomas access to Beaver Lake. *Millen*, 201 Wis. 2d at 678. The Millens claimed that Thomas'

557

merger of her dominant estate with adjoining parcels improperly enlarged the dominant estate and thus expanded the easement. *Id.* In our decision, we hearkened back to well-established law stating that "an easement for a specified purpose may not be enlarged such that an *added burden* is placed upon the servient estate." *Millen*, 201 Wis. 2d at 685 (citing *S.S. Kresge Co. v. Winkelman Realty Co.*, 260 Wis. 372, 376–77, 50 N.W.2d 920 (1952)) (emphasis added). Focusing the inquiry on the "actual burden imposed," we held that the "mere fact" that the dominant estate was expanded to nondominant parcels did not resolve the issue. *See Millen*, 201 Wis. 2d at 685.

¶ 11.  In its rationale for granting summary judgment to the Club, the circuit court turned to the *Millen* court's discussion of the burden imposed on the servient estate. The circuit court stated that "while [*Millen*] also deals with ownership of abutting lands, the rationale is directly on point in this case." The court held that "[t]he activities engaged in by [Scheife] in this case did not enlarge the easement and placed no added burden upon the servient estate." It concluded that Scheife "properly used the easement" to gain "access to the dominant estate," and the fact that "he subsequently entered the adjoining property, with permission, does not impermissibly extend the use of the easement."

¶ 12.  Grygiel asserts that *Millen*'s "added burden" analysis was limited to the circumstances presented there; specifically, whether the purchase of land adjoining the dominant estate requires the permanent extinguishment of the easement. In *Millen* we observed, "When Thomas merged the original dominant estate into her surrounding lands, the effect *under the existing facts* was not to increase or enlarge the use or nature of

the easement." *Id.* at 688. As a result, Grygiel's argument goes, *Millen* can have no application here.

¶ 13. Underlying Grygiel's argument is the assumption that the dominant estate owned by the Club was expanded when the hunters crossed onto Unrein property to hunt. Grygiel turns to *Lyons v. Lyons*, 371 S.E.2d 640 (W. Va. 1988), for the proposition that the owner of a parcel served by an access easement cannot use the dominant estate as a "home base" from which to expand the benefit of the easement to other parcels. Arguing from *Lyons*, Grygiel asserts that the beneficiaries of that easement could not "first [use] the easement to get to their 6.5 acres (i.e., their home base), and then once there, discard their charade and go to the extra 40 acres." However, in *Lyons*, the owners of the six acres sought to use the easement to access an additional forty acres acquired after the grant of the easement. *Id.* at 644. The court held that an easement "cannot be extended, as a matter of right, by the owner of the dominant estate, to other lands owned by him." *Id.* (citation omitted). Grygiel directs us to several other cases that have equally distinguishable facts. *See, e.g., Gojmerac*, 250 Wis. 2d 1, ¶ 1 (when dominant estate is subdivided, only those lots that were part of the dominant estate at the time the easement was created are entitled to use the easement); *Brown v. Voss*, 715 P.2d 514, 515–17 (Wash. 1986) (holder of an easement cannot traverse the servient estate to reach a residence partially situated on a subsequently acquired parcel); *McLaughlin v. Board of Selectmen of Amherst*, 664 N.E.2d 786, 790 (Mass. 1996) (after-acquired property may not be added to the dominant estate without the express consent of the owner of the servient estate).

¶ 14. The Club contends that although *Millen* turned on the facts, the court made clear "that the use

of an easement by a dominant estate owner in connection with lands abutting the dominant estate does not automatically improperly enlarge the easement." Accordingly, the Club asserts, the resolution requires analysis of the added burden, if any, upon the servient estate. We agree. *See Gojmerac*, 250 Wis. 2d 1, ¶ 48 (noting that use of the easement would be "permitted until such time as [owners of the servient estate] prove that use of the easement should be extinguished for a particular, recognized reason, such as that the use has increased the burden on the servient estate"). Here, the circuit court aptly observed in its decision:

> No one disputes that [Scheife] had the right to utilize the easement, with or without invitees, to go on the land of the Monches Fish & Game Club for the purpose of hunting. The fact that the [hunters] engaged in the same activity on adjoining land does not materially change the use of the easement. In other words, had the same [hunters] spent the entire day hunting on the Monches property, they would have been entitled to use the easement to leave the property . . . . They still were entitled to exit via the easement. The imposition on [Grygiel's] land is exactly the same whether the hunting occurred on the Monches property or on adjoining property.

¶ 15. The case law upon which Grygiel relies does not refute the circuit court's observation. Unlike the circumstances in *Gojmerac, Lyons,* and *McLaughlin,* this is not a case about a subdivided parcel that increases the burden on a servient estate or about after-acquired property that expands the size of a dominant estate. There is no legal authority for Grygiel's proposition that an easement holder must arrive at the dominant estate and never leave it. Further, the undisputed facts indicate that when Club member Scheife

and his invitees traveled the access road to the Club's property, the burden on the servient estate was no greater than it would have been had the hunters remained on the Club property. Even accepting for the sake of argument that the non member invitees increased the number of easement users and thus increased the burden on the servient estate, the added burden would be de minimis[5] and Grygiel's complaint would fail. Consequently, Grygiel's claims for misuse of the easement were properly dismissed.

¶ 16.  Grygiel's final argument involves the interpretation of the 1991 court order. Grygiel asserts that when Scheife "assisted and aided . . . other third-party strangers to come onto [Grygiel's] property without consent," Scheife violated the "unambiguous" court order prohibiting the Club from inviting third parties to access lands outside the dominant estate. Grygiel directs us to the following language from the 1991 order:  "[The Club] cannot, however, grant use of the easement to others. It cannot grant that right to use this easement as a means of gaining access to other properties by parties who are not using [the Club's] property."

¶ 17.  In response, the Club directs us to the 1991 decision, which expressly allows invitees to use the easement to access the Club's property. The 1991 court's reference to third parties, the Club notes, used the example of farmers driving equipment across the easement to access their fields. The Club argues that Scheife's hunting colleagues were invitees and therefore specifically allowed to traverse the easement under the

---

[5] De minimis means legally insignificant or a trifle. *See, e.g., Hehl v. Chippewa & Red Cedar Valley Carpenters' Dist. Council,* 4 Wis. 2d 629, 635, 91 N.W.2d 226 (1958); Black's Law Dictionary 464 (8th ed. 2004).

1991 declaration of rights of the parties. It asserts that the circuit court correctly construed the earlier order when it stated that the 1991 judgment "does not restrict [the Club] or its invitees from using the easement to gain access to other properties, only that it restricts third persons from doing so."

¶ 18. Grygiel characterizes the Club's arguments as "fatuous," but provides no legal analysis or authority to support its request that we "correct" the circuit court's interpretation of the previous order. Because we conclude that the circuit court reasonably distinguished between invitees and other third persons, and because Grygiel has not provided any legal argument to show otherwise, we see no need to "correct" the circuit court's interpretation.

## CONCLUSION

¶ 19. The 1991 decision of the circuit court construed the language of the easement to allow the Club's members and invitees to use the easement to access Club property. Scheife and the other hunters used the easement to access Club property prior to hunting with permission on neighboring land. There is no expansion of the dominant estate and no added burden on the servient estate. Accordingly, the circuit court's order for summary judgment granted by the circuit court in favor of the Club is affirmed.

*By the Court.*—Order affirmed.